Kekula and Husband *v.* Pioeiwa and Paku.

## SUPREME COURT—IN BANCO.

### JULY TERM—1880.

*Harris, C. J., Judd and McCully, J.J.*

KEKULA AND HUSBAND *vs.* PIOEIWA AND PAKU.

#### ON QUESTION RESERVED.

THE PLAINTIFF was the issue of a woman by a man not her husband, he being married to another woman. On the death of his wife, he married plaintiff's mother;

HELD, that the Act of 1866, that children born out of wedlock are rendered legitimate on the marriage of the parents with each other, does not apply to this case, and the plaintiff being the offspring of an adulterous intercourse is not legitimate, and cannot inherit from her putative father.

Opinion of the Court by JUDD, J.

This is a suit of ejectment for the possession of one undivided half of a tract of land of one hundred and seven acres in the District of Koolau, Maui, granted to one Manu by Royal Patent No. 3,066, and the plaintiff claims the same as being a daughter of Manu, now deceased. The defendant, Pioeiwa, is a minor, and his guardian *ad litem* disclaimed all right of possession to the land.

The defendant, Paku, made no answer and was defaulted. Upon the testimony of the plaintiff, presented *ex parte* to the Court, it appeared that Manu had a wife, Lohelohe by name, and during his coverture with her he cohabited with a woman named Paku, by whom he had the plaintiff Kekula. On the death of Lohelohe, Manu married Paku in 1847 or 1848. It appears also that Manu had a son Moke, by his first wife, Lohelohe, who now survives, and who would be entitled to inherit from his father an interest in this land.

The Legislature of 1866 passed an Act in these words: "All children born out of wedlock are hereby declared legitimate on the marriage of the parents with each other, and are entitled to the same rights as those born in wedlock."

The question reserved for the consideration of the Court is whether Kekula is capable of inheriting from Manu.  "The doctrine of the legitimation of offspring by the subsequent marriage of their parents is of Roman origin, introduced by Constantine, to put down that matrimonial concubinage which had become so universal in the empire, and the canonists based the law not on general views of expediency and justice, but upon a fiction, in order to reconcile the new law with established rules; for assuming that as a general rule, children are not legitimate unless born in lawful wedlock, they declared that *fictione juris,* the parents were married when the child was born.  But the Scotch Courts have placed the rule once more where its imperial founders left it, namely, on the grounds of general policy and justice.  Legitimation is thought to be recommended by these considerations of equity and justice, that it tends to encourage what is at first irregular and injurious to society into the honorable relation of lawful matrimony; and that it prevents those unseemly disorders in families, which are produced where the elder born children of the same parents are left under the stain of bastardy, and the younger enjoy the status of legitimacy."  Schouler's Domestic Relations, pp. 308, 309.

This doctrine of the civil law has been adopted by many States of the American Union, but it has not found favor in England.  7 Clark and Finley, 895.

Taking either view of the philosophy of this law, whether by a fiction of law it presumes that the parents were married at the time of the birth of the child, or whether the law is to be sustained because it encourages lawful matrimony, we cannot see how it can be applied to the status of the plaintiff in this case.  Her father had a lawful wife living when the plaintiff

Kekula and Husband *v.* Pioeiwa and Paku.

was born to him of another woman. He was already bound in the ties of lawful matrimony.

The legitimation of offspring born of an adulterous connection by subsequent marriage does *not* encourage what is at first irregular into the honorable relation of lawful matrimony, but it would tend directly to encourage and sanction adultery itself. It would tend to inspire those who have formed such an adulterous alliance with a desire to put their lawful partners out of the way or to get rid of the obligations of marriage in some manner. The law was intended to apply only to those who, free from all obstacles in the way of marriage except their disinclination to conform to the law, have formed an alliance from which children have resulted and who afterwards satisfy the demands of society and the law by complying with it. In France, where this rule is adopted, it expressly excepts the cases of children who are offsprings of incestuous or adulterous intercourse. 2 Kent's Com., Section 210.

We have failed to find a case where a similar act has been held to legitimate offspring of an adulterous intercourse. Any other construction of this Act would be subversive of good morals, and we cannot think that the Legislature so intended it.

The plaintiff takes nothing by her complaint.

S. B. Dole for plaintiff.

A. S. Hartwell for defendant.

Honolulu, July 30, 1880.