# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

## SMITH V. PERRY, ADM'R, AND ALS.

### JUNE 18TH, 1885.

1. **MARRIAGE OF COLORED PERSONS**—*Legitimacy of children.*—Under act approved 27 February, 1866, to legalize marriage of colored persons living together as husband and wife at the time of its passage, children of such persons are deemed legitimate whether born before or after the passage of said act, and whether any sort of marriage ceremony had taken place between the parents or not.

2. **IDEM**—*Bastardy.*—In such cases, the question of bastardy must be considered as in any case where bastardy is alleged as to a child born during coverture, or born before and recognized afterwards.

3. **LEGITIMACY**—*Presumption.*—This law presumes legitimacy where husband recognizes the child as his, and impossibility of procreation is not established, though the cohabitation had ceased before the passage of this act.

4. **BASTARDS IN VIRGINIA.**—They are persons born out of wedlock, lawful or unlawful, or not within competent time after termination of coverture, or if born out of wedlock, whose parents do not afterwards intermarry and the father acknowledges them, or who are born in wedlock when procreation by the husband is impossible.

Appeal from decree of circuit court of Wythe county, rendered 7th December, 1881, in a chancery suit wherein Allen Smith is complainant, and Charles Perry, administrator of Edmond Smith, deceased, and Westley Johnson and Richard Clark are defendants.

The object of the suit is to settle the estate and distribute the same, the complainant claiming to be the father and sole heir and distributee of the intestate. The defendants, Johnson and

Clark, contended that the intestate was a bastard, and that they were his next of kin on his maternal side, and consequently his lawful heirs, and filed answers setting up their contention. Depositions were taken on both sides, whereby it was established that Allen Smith, the complainant, and Mary Bell were colored persons living together as husband and wife when the act of 27th February, 1866, was passed; that the intestate, Edmond Smith, was a child of the woman, born before that time, and living with them as their child, recognized as such by both, bearing the man's name, educated as his child. and calling him father; and that after his mother had died, and he had gone out, earned money and purchased real and personal property, he had been taken sick and carried to Allen Smith's house, and there died. After his death, he was alleged by the defendants, Johnson and Clark, and by many others of respectability, to have been the son of one Randall Austin, and a bastard.

The court below decided that Allen Smith was not the father of the intestate, and that said Johnson and Clark were his heirs at law and distributees, and as such entitled to his estate. From this decree Allen Smith appealed.

*Robert Crocket*, for the appellant.

*Holbrook & Thomas*, for the appellees.

The Act of Assembly, February 27th, 1866, Code of Virginia, 1873, chapter 103, section 4, was intended simply to legalize *de facto* marriages had between colored persons, and in no wise to alter or affect the Bastardy Act, Code 1873, chapter 119, sections 5 and 6.

So that the Statutes of Descents, in Virginia, applies alike to white and colored persons in respect to issue born out of wedlock, and the same proof of paternity and of recognition by the father before or after the marriage is necessary to legitimize such issue. 1 Minor's Institutes, 421.

Three things are essential under our Bastardy Act to legitimize the child.

1. The paternity of the father.

2. Recognition by him, either before or after marriage.

3. The marriage of the parents.

These must all concur, and must be established by conclusive proof. Code 1873, chapter 119, section 6; *Ash* v. *Way's Administrators et als,* 2 Gratt. 204; Judge Brooke, in *Coutts* v. *Greenhow,* 2 Munf. 373. See also 5 Call, 439, and 3 H. and M. 225.

The proof in this cause does not establish paternity of appellant, no recognition, but the reverse. This is shown

*a.* By the fact that appellant brought suit in the first place against Edmond Smith's estate as a creditor, which is incompatible with his claim in this suit.

*b.* By the preponderance of the evidence taken altogether in favor of the appellees.

*c.* By the number and character of the witnesses for appellees, and their better opportunities for learning the facts. *Sixteen* witnesses were examined for them. Of these, Dr. James Kincannon, Mrs. Susanah Kincannon, and Judge J. H. Fulton, and Sela Nave, Shepherd Austin, Gloud Adkins and Randall Austin (the last four colored) were members of the Kincannon family, to which Edmond Smith's mother belonged, and all of whom testify that Randall Austin, and not Allen Smith, was the reputed father of the said Edmond.

*d.* By the admission of Allen Smith himself that he was not Edmond's father.

*e.* By the statement of Edmond's mother.

*f.* By the positive testimony of Randall Austin, that he himself, and not Allen Smith, was the father of the said Edmond.

*g.* Of *ten* witnesses examined for appellant, not one of them was a member of the Kincannon family.

The judge of the circuit court knowing many of the wit-

nesses personally was able to judge of their credibility, and his decision is therefore entitled to the greater consideration.

LACY, J., delivered the opinion of the court.

The appellant instituted his suit in the circuit court of Wythe county, against the appellee as the administrator of one Edmond Smith, dec'd, for an account and distribution of the said estate, claiming to be entitled to the same as the father and heir at law of the said Edmond Smith, dec'd, and against the appellees, Johnson and Clark. That the said appellant was a colored person and a slave before the passage of the act of assembly of Feb'y 27th, 1866, " to legalize the marriages of colored persons then cohabiting as husband and wife; " that at the time of the passage of the said act, he being such colored person, he had undertaken and agreed to occupy the relation of husband to a colored woman named Mary Bell, who like himself was a colored person, and that she had in like manner undertaken and agreed to occupy the relation to him of wife: and · that thus he and his wife, both being colored persons and slaves, had undertaken and agreed before the passage of the said act to occupy the relation to each other of husband and wife, and that they were cohabiting together as such at the time of the passage of the said act. That there had been born to them before the passage of the said act, a son, who was named Edmond Smith, who was the same Edmond Smith mentioned above, now deceased, and upon whose estate the said appellee Perry had qualified as administrator. That he had so lived with his said wife until her death, which occurred many years afterwards, and that their son, who had survived his mother, was always recognized as their child, reared as such in their house. That the said Edmond, growing to manhood, worked for himself and acquired property, and falling sick, was removed to the house of his said father, where he was cared for until his death as his son.

To this bill the administrator, the appellee Perry, answered, disclaiming knowledge upon the subject of the bill as to the claim of said appellant, and calling for proof. The appellees, Johnson and Clark answered, claiming to be the next of kin on the maternal side of the said Edmond Smith, dec'd, claiming that said Edmond was a bastard, and not the child of his said reputed father, and husband of his mother, but of another person, and that his property passed and descended to his maternal kindred only.

The depositions of numerous witnesses were taken, and upon the hearing the circuit court decided that Allen Smith was not the father of Edmond Smith; that the said Edmond Smith was a bastard, and that his estate passed to his maternal kindred alone, and that the appellees, Johnson and Clarke, were his heirs at law and distributees, and as such were entitled to his estate, and dismissed the bill of the plaintiff.

From this decree an appeal was allowed to this court.

Under the act of February, 1866, the children of the colored persons coming within its provisions are deemed by the law legitimate, whether born before or after the passage of the act in question. The act is made to apply to such persons as are included within its terms, from reasons of public policy too obvious to need review at this day, the status of the slave having been changed to that of citizen by the law, recognizing the logic of events, the marriage relation as existing among those people was respected and brought within the sanction of the law; and the act legalizing the informal marriage, making the issue of such legal marriage legitimate, in its beneficence, reached back into the past and legitimatized their children, born before the passage of the act, and thus before the marriage was legal.

But it is contended by the appellees, that the object of the law was to legitimatize only such children born before the act was passed, as had been born after the parents had taken upon themselves the form of marriage, sometimes formally had between slaves; and that the law did not intend to legitimatize

children born to their parents before some sort or any sort of formal public ceremony was undergone between the parties; and that in this case Edmond Smith was born before a formal ceremony of marriage was had between his mother and her husband.

It is a *concessum* in the cause that Edmond Smith was born before there had been any sort of ceremony performed between his mother and Allen Smith; and that such ceremony, formal in its character, and public in its enactment, though not recognized by the law, was had between the parties before the passage of the act in question.

But the proposition that the law had any reference to this sort of marriage, or that the fact of birth before or after such ceremony is in anywise within the contemplation of the law, is denied and controverted by the appellant.

It is decisive of this question that the law does not in any way refer to such ceremony, but provides for cases where "colored persons have undertaken and agreed to occupy the relation to each other of husband and wife. and shall be cohabiting together as such at the time of the passage of the act."

The plain terms of the law include all such persons, without any reference to what sort of an undertaking or agreement has been entered into, and extends its beneficence to all their children whether born before the passage of the act or afterwards; obviously the object of the law was to legalize the cohabitation referred to, and to legitimatize the issue of such cohabitation. This remedy provided by the law for illegal marriages, and for the bastardy consequent thereto, must be liberally construed to advance the remedy, and extend the relief contemplated by the law. And it would be illiberal to construe this law to require some formal ceremony when none whatever is required by the law, and to apply the law to a part of the children and exclude some, when none are excluded, but all included by the law. To so construe the law would limit its application to only a small part of the persons who seem to be

included by its terms, and to convert the law into a hollow mockery so far as the great body of the colored people are concerned.

If there had never been any formal or public marriage ceremony between the parties, if they had agreed to occupy the relation of husband and wife to each other, and were cohabiting as such at the time of the passage of the act, the marriage is consummated by the passage of the act, and the issue of the union, whether then born or born afterwards, is legitimatized. And it is entirely immaterial, whether there had been any formal ceremony or not, either as to the legitimacy of the children, or as to the legality of the marriage. The act consummated both, when the parties came within its terms. But it is contended farther by the appellees, that the appellant was not in fact the father of Edmond Smith, but that he was begotten by a negro named Randall Austin, and although his mother was legally married, he did not come within the terms of the law which legitimatized their children, he being in fact the child of only one of them, and that one the mother.

It must be conceded that in such a case the question of bastardy must be considered as that question would be, in any case where bastardy was charged against a person born *during coverture*, or recognized during coverture, though born before. The law having legitimatized all their children, no matter when born; and although the coverture may have ceased, the children are made legitimate if they are recognized by the father as his.

The presumption of the law is in favor of the legitimacy of the child where recognized by the husband, unless procreation by the husband was impossible for any cause, from his being beyond seas, and the like.

This law legalizes the undertaking and agreement, if cohabitation has continued unto the day the law was passed, and legitimatizes all their children, and if cohabitation had ceased from

any cause, it legitimatizes the children, if recognized by the father. It thus, in effect, antedates the marriage, and makes it valid from the time the relation began, and their children are legitimate whether recognized or not, if the cohabitation continued unto the day of the passage of the law, and it was not in the power of the father to bastardize the children begotten by him, if he was still cohabiting with the mother. Where the connection and cohabitation has ceased before the passage of the law, the legitimacy of the child depends upon the recognition of the father.

We have seen then that Edmond Smith was a legitimate child. Unless he is proved by positive testimony to be a bastard, the law *presumes* that he was not a bastard. What is a bastard in Virginia? It must be borne in mind that a bastard in Virginia is not defined as at the common law. He is one born out of wedlock, lawful or unlawful, or not within a competent time after the coverture is determined; or, if born out of wedlock, whose parents do not afterwards intermarry, and the father acknowledge the child; or who is born in wedlock when procreation by the husband is for any cause impossible. Min. Inst. vol 1, 242. Edmond Smith occupies the position of a person born in wedlock, and where access by the father is neither disproved nor *denied.*

The attack upon the legitimacy of Edmond Smith by his maternal kindred, in this controversy over his property, is made upon the admission in effect of all that has been said herein.

It is abundantly proved and not denied, that Allen Smith and Mary Bell were colored persons, living together as husband and wife when the act of February, 1866, was passed; that Edmond Smith was the child of the woman, at least, born before that time, and living with the parties as their child, claimed to be their child by both parents, taking the father's name, and growing up in the household as their child, educated

as such, recognized as such, living and dying as such, being called son by the father, and calling the husband of his mother father.

Unrecognized, uncared for, unnoticed by this Randall Austin in any way whatever, and no claim made concerning him by Randall Austin, until after his death, Randall Austin claims his paternity only to stamp him with bastardy. There are numerous witnesses who testify in the cause, however, who assert the belief that Randall Austin was actually the father of Edmond Smith, and some of these are most respectable. They assert that Mary Bell had a child by Randall Austin before the birth of Edmond, which child was called and known as Ruth Austin, and was admitted to be the child of Randall Austin, and that Edmond also was so considered.

Let us, however, reflect that this mystery of the paternity of Edmond Smith has been settled long years ago by the only competent authority; the mother then living, now in her grave, gave authoritative solution to the problem, in which all parties interested or concerned acquiesced for more than a quarter of a century, and which is only questioned when the dead child's property is matter of contention.

The charge now, that in moments of heat or irritation, Allen Smith charged Edmond Smith with bastardy, is sufficiently met by the statement that Allen Smith himself gave emphatic contradiction and refutation to these reproaches by the unquestioned acts of his whole life towards this boy and his mother.

There is no evidence in the record which tends to prove no access or impossibility of procreation from any cause, and the child thus born in what the law has made a sort of coverture of the parents, must be deemed as the law commands, legitimate, and not a bastard.

If the father had died first, and the claim of legitimacy had been made by the son, there would under this evidence, have been none to question it.

In giving full force and effect to this law, so wise and hu-

mane, and so beneficent, it is the duty of the court to so construe the law as to advance the remedy and extend the relief, rather than to curtail either, and setting its face against the charge of bastardy, hold it to the well established rules that govern that question, with all the presumptions against it.

The circuit court having sustained this charge of bastardy in the decree complained of, the same must be reversed and annulled, and the cause remanded to the said court for further proceedings to be had therein, and with directions to grant the relief prayed for in the bill of the appellant, the plaintiff in that court, and to cause the estate of the said Edmond Smith to be duly ascertained and settled, and the balance to be paid over to the said Allen Smith, the father of said Edmond Smith, who is his heir at law and entitled to his estate.

DECREE REVERSED.