# Richmond

## LEMONS V. HARRIS AND OTHERS.

### January 15, 1914.

1. APPEAL AND ERROR—*Verdict Contrary to Evidence—Evidence Not Certified.*—In the absence of the evidence, this court cannot re-reverse the ruling of the trial court setting aside a verdict as contrary to the law and the evidence. Although it appears from the record that the sole ground relied on by the defendants for setting aside the verdict was that the court permitted counsel for the plaintiff to refer to a section of the Code which had no possible bearing on the case; yet, where it does not appear what reasons may have controlled the court's action this assignment of error cannot be passed upon when the evidence in the case is not certified.

2. MARRIAGE—*Slaves—Issue Legitimated—Proof of Agreement to Live Together.*—Slaves cannot contract, hence their marriages are void. By an act of February 27, 1866, the issue of colored persons who had cohabited together as man and wife, and were then so cohabiting were legitimated whether the rites of marriage had been celebrated between them or not. Under this statute, it is not necessary to prove an agreement *in terms,* that the parties will take one another as husband and wife, but the fact of the relation existing may be established by the acts, conduct and conversation of the parties.

3. SPECIAL JURY—*Discretion.*—The granting or refusing to grant a special jury is a matter resting in the sound discretion of the trial court whose action will not be disturbed where it does not appear that the discretion was abused or the parties prejudiced thereby.

4. COSTS—*Cost of Former Trial—Payment Before New Trial.*—If the costs of the former trial are paid before the new trial is had, that satisfies the requirement of the statute.

5. EVIDENCE—*Pedigree—Whose Declarations Receivable—Death of Declarant.*—Pedigree declarations constitute an exception to the hearsay rule, and only those connected with the family by blood or marriage are competent declarants, and the declarations of even these are inadmissible during the lifetime of the declarant. If living, the declarant is subject to examination as any other witness.

Error to a judgment of the Circuit Court of York county in an action of ejectment. Judgment for the defendants. Plaintiffs assign error.

*Reversed.*

The opinion states the case.

*Jones & Woodward* and *Sidney Smith,* for the plaintiff in error.

*J. Thos. Newsome* and *Conway S. Shields,* for the defendants in error.

WHITTLE, J., delivered the opinion of the court.

Harriet Lemons brought this action of ejectment against A. A. Harris and John Randall to recover the land described in the declaration. She claims title to the property as the legitimate child and sole heir at law of Henry Diggs, deceased, the former owner. The defendants, on the other hand, claim through deeds from a brother and sister of the decedent, who also maintain that they are his real heirs.

Henry Diggs, the putative father of the plaintiff, and Margaret, her mother, were negroes and slaves, and she was born in Virginia during the civil war. The case was twice tried. At the first trial there was a verdict for the plaintiff, which the court set aside. The second verdict was for the defendants, and upon that verdict the judgment under review was rendered.

The action of the court in setting aside the verdict at the first trial is assigned as error, and we are now asked (in accordance with the statute, Acts 1891-2, p. 692) to enter judgment on the first verdict. There is no certificate of the evidence upon which that verdict was founded, and the motion is rested on the agreed statement that "the

defendants moved the court to set aside the verdict on the ground that it was contrary to the law and the evidence, and that the sole ground relied upon by the defendants was that the court allowed counsel for the plaintiff in the argument of the case to refer to section 2554 of the Code, which is in the following words: 'The issue of a marriage deemed null in law, or dissolved by the court, shall nevertheless be legitimate'; and that one of the witnesses for the plaintiff . . . testified that she was present when the ceremony of marriage was performed between the reputed father of the plaintiff and her mother during the civil war. . . . To which action of the court, in setting aside the verdict of the jury, the paintiff . . . excepted."

Manifestly this court cannot reverse the ruling of the circuit court in setting aside the first verdict in the absence of the evidence. It may be that the sole ground relied on by the defendants was that the court permitted counsel to refer to section 2554, but it does not appear what reasons may have controlled the court's action, and without having the evidence before us we cannot pass upon that assignment.

We may remark, however, in passing that counsel ought not to have been permitted to refer to section 2554. It had no possible bearing on the case, and such reference was calculated to mislead the jury.

Professor John B. Minor, in his admirable historical discussion of slavery in Virginia, observes: "Previous to February 27, 1866, the marriage laws of Virginia did not contemplate nor include negroes, not even *free negroes,* at least in respect to any penalties for disregard of the laws touching license or prohibition of bigamy, of incestuous marriages, or lewd cohabitation; and hence marriages of free negroes (those of slaves being void) were governed altogether by the common law." 1 Minor's Inst. (4th ed.), p. 268. The author, at page 188, says: "It is agreed that

slaves have no power to make contracts. Hence the mar-
riages of slaves are void."

Again, at page 268, attention is called to the act of
February 27, 1866, as follows: "By the act of February 27,
1866, all distinction between white persons and negroes
as to the mode of contracting marriage is obliterated, al-
though, as we have seen, it is still penal for a white per-
son and a negro to intermarry. And it is provided, in
order to meet the case of the colored population, especially
of that part which had been slaves, that where colored
persons (which phrase includes free colored persons as
well as slaves) have cohabited as husband and wife, and
were then so cohabiting (27th February, 1866), whether
the rites of marriage had been celebrated between them or
not, they should be deemed husband and wife, and their
children, whether born before the act or after, should be
legitimate. And that if they had then ceased to cohabit,
the children of the marriage recognized by the man should
be deemed legitimate. V. C. 1875, ch. 103, sec. 4; V. C.
1887, ch. 100, sec. 2227; *Francis* v. *Francis,* 31 Gratt. (72
Va.) 286-7; *Smith* v. *Perry,* 80 Va. 563.

"It is not necessary under this statute to prove an agree-
ment *in terms* that the parties will take one another as
husband and wife, but the fact of the relations existing
may be established by the acts, conduct and conversation
of the parties." *Francis* v. *Francis,* 31 Gratt. 287.

The two assignments of error with respect to the re-
fusal of the court to grant the prayer for a special jury and
to set aside the order awarding a new trial because when
the motion was made the defendants had not paid the costs
of the previous trial, are both without merit. The grant-
ing or refusing to grant a special jury is a matter resting
in the sound discretion of the court, and it does not appear
either that the discretion was abused in this instance or
that the plaintiff was prejudiced by the refusal. The costs

of the former trial were paid before the new trial was had, and that, in the circumstances, satisfied the requirement of the statute.

The controlling question was whether or not the parents of the plaintiff came within the provisions of the act of February 27, 1866, and it was, therefore, not only proper, but essential, for the circuit court to instruct the jury upon that phase of the case.

The remaining assignment of error which demands our notice involves the admission by the court, over the objection of the plaintiff, of the evidence of a witness touching certain unsworn statements alleged to have been made by other persons concerning plaintiff's paternity. Those statements were inadmissible on two grounds: (1) Because one of the declarants was not a member of the family or so connected with it by affinity as to be competent to speak on the question of pedigree, and (2) because neither declarant was shown to be dead.

Pedigree declarations constitute an exception to the hearsay rule, and only those connected with the family by blood or marriage are competent declarants. And evidence of such declaration during the lifetime of the declarant, of course, is inadmissible. If living, the declarant would be subject to examination as any other witness. This subject is satisfactorily treated in Modern Law of Evidence (Chamberlayne), vol. 4, ch. 43, p. 4037 *et seq.*

For these reasons the judgment must be reversed, the verdict of the jury set aside, and the case remanded for a new trial.

*Reversed.*