HELEN KAWAILANI McMILLAN *v.* PATRICK GLEASON, CHARLES K. NOTLEY, CLARENCE N. HUGHES, WILLIAM N. HUGHES, EMMA V. HUGHES, CHARLES EDWARD HUGHES, MARIA ALICE COLBURN, HENRY THOMAS HUGHES AND JOHN I. MAKAIWI.

No. 1678.

APPEAL FROM CIRCUIT JUDGE FIRST CIRCUIT.
HON. J. J. BANKS, JUDGE.

SUBMITTED FEBRUARY 16, 1926.          DECIDED JUNE 19, 1926.

PERRY, C. J., LINDSAY, J., AND CIRCUIT JUDGE MASSEE
IN PLACE OF BANKS, J., DISQUALIFIED.

BASTARDS—*legitimating of.*

> A child born out of wedlock whose parents thereafter marry although such marriage occurred prior to the enactment of Act 71, L. 1907 (Sec. 3043, R. L. 1925), is by such Act made legitimate and entitled to the same rights as a child born in wedlock.

OPINION OF THE COURT BY LINDSAY, J.
(Perry, C. J., dissenting.)

This is an appeal from a decree made and entered by a circuit judge at chambers, in equity, in favor of com-

plainant. The facts in the case are not disputed and are as follows:

Complainant was born in Honolulu on February 22, 1894. Her father was David Fyfe Notley and her mother Kamalu Kawelu. Kamalu was at that time a married woman who had for several years prior thereto lived separate and apart from her husband. For more than a year prior to the birth of complainant, her parents had lived together in adultery and, as a result of this adulterous cohabitation, the complainant was born. In June, 1900, the mother of complainant obtained a divorce from her husband and, in the month of September following, six years after the complainant's birth, her parents were duly and legally married and thereafter continued to live together as husband and wife until the death of the father in September, 1922. The mother died in October, 1922.

On March 3, 1909, Notley, the father of complainant, executed a deed of trust under which he conveyed certain property, real and personal, to William Henry, in trust to pay all of the income of the trust estate to the grantor during his lifetime, and, upon his death, "to convey the estate hereby created in equal shares to the lawful issue of said party of the first part then living," and if the party of the first part should leave no lawful issue him surviving, the trust estate to descend to the heirs at law of grantor according to the laws of descent of the Territory. On the resignation of William Henry as trustee, on May 29, 1914, the respondent Gleason was appointed his successor in trust.

Complainant, claiming, under the statement of facts above set forth, to be the sole surviving lawful issue of David Fyfe Notley, brought these proceedings to compel the trustee to convey the property constituting the trust estate to her. The intervenors are those relations of David Fyfe Notley who, in the event that it is held that

complainant is not the lawful issue of said Notley, will be entitled to take as his heirs at law. It is admitted by all of the parties hereto that this case presents but one question, namely, was the complainant legitimated by the provisions of Act 71, L. 1907 (now Sec. 3043, R. L. 1925)? If she was so legitimated, she is the sole surviving lawful issue of David Fyfe Notley, and the decree of the circuit judge in favor of complainant was correct and should be affirmed.

It is contended by intervenors that the decree of the circuit judge is erroneous for the reason that the statute, authorizing the legitimating of children born out of wedlock, is purely prospective, is confined solely to cases in which the marriage of the parents of such children is posterior to the enactment of the statute, and does not apply to cases such as the present where the marriage of the parents of the bastard admittedly occurred prior to the passage of the statute. The contention of intervenors is that the law looks with disfavor upon statutes that are to be given retrospective operation and that, unless the legislative intent that a statute is to be given retrospective effect is so clearly to be gathered from the very language of the statute as to admit of no doubt of such intention, it is the duty of the courts to declare such statute to be prospective and not retrospective. On the other hand, the contention of complainant is that, under the statute of this Territory, a bastard, whose parents have married, either before or after the enactment of the statute, comes within the provisions of the statute and that such legislative intent is clearly discernible from the terms of the statute itself.

At common law a child born out of lawful wedlock was *filius nullius* and no method for the legitimating of such a child was known. In England this harsh doctrine of the common law is still adhered to, and no statutory

method is there provided whereby a bastard may be made legitimate and nothing short of a private Act of Parliament can be resorted to for the removal of the stigma attaching to the unfortunate issue of erring parents. The civil law, however, differed from the common law in its treatment of this class of persons and, at an early date, prescribed that the subsequent marriage of the parents of a bastard would render the bastard legitimate. In Scotland the rule of the civil law has been followed. In this connection it is interesting to note that, under the civil law, the marriage of the parents of a bastard is given retrospective operation in that, such marriage is held to relate back to the time of the birth of the child and to make such child legitimate *ab initio*. See *Kekula* v. *Pioeiwa*, 4 Haw. 292.

Not many of the states of the United States have followed the harsh rule of the common law and most of the states have by statute provided ways by which bastards may be legitimated. In most of the states, in order that a bastard may become legitimate, it is required, not only that the parents intermarry, but that thereafter the father shall recognize the child as his legitimate offspring. In Hawaii the statute authorizing the legitimating of bastards does not require recognition by the father, but makes the legitimization depend for validity solely upon the intermarriage of the parents.

The first statute in this jurisdiction authorizing the legitimating of bastards was enacted in 1866, and read as follows: "All children born out of wedlock are hereby declared legitimate on the marriage of the parents with each other, and are entitled to the same rights as those born in wedlock." Notwithstanding the broad and inclusive terms of this statute, this court, in *Kekula* v. *Pioeiwa*, 4 Haw. 292, decided in 1880, held that "all children born out of wedlock" were not legitimated by the marriage of

their parents, since the statute did not apply to children born of parents, either of whom, at the time of the child's birth, was married to another, and thus incapable of contracting a valid marriage. In 1905, in the case of *Kealoha* v. *Castle,* 17 Haw. 45, the question as to whether the child of an adulterous cohabitation, whose parents had intermarried after the removal of the legal impediment to such marriage, was thus legitimated. In that case the court adhered to its ruling in *Kekula* v. *Pioeiwa, supra,* Frear, C. J., however, stating: "I concur on the ground that, although I think the decision in the *Kekula* case erroneous, we ought not to overrule it under all the circumstances." The decision of this court in that case was affirmed by the Supreme Court of the United States (see 210 U. S. 149), not, however, upon a construction of the statute involved, but because the court felt bound by the construction placed thereon by this court in the *Kekula* case, at which time this was the court of last resort of an independent sovereignty. In its opinion the Supreme Court of the United States did not express its approval of the correctness of the doctrine enunciated by this court, but, on the contrary, seemed rather to question that doctrine, saying: "In other jurisdictions, however, statutes of similar character have been given a broad construction, and where exceptions have not been stated none have been implied" (citing numerous cases).

Almost immediately after the decision of the Supreme Court of the United States in *Kealoha* v. *Castle, supra,* the legislature of this Territory by Act 71, L. 1907, amended the Act of 1866 to read as follows: "All children born out of wedlock, irrespective of the marriage of either parent to another, become legitimate on the marriage of the parents with each other and are entitled to the same rights as those born in wedlock." It is under the provisions of this Act that complainant claims to be

the legitimate child of David Fyfe Notley. It therefore devolves upon this court to determine whether, from the language of this Act, the contention of complainant is sound. Was it the intention of the legislature that the humane provisions of this statute should extend to all children born out of wedlock or that it should apply only to some of such children? Did the legislature, from the language employed, intend that in case parents of a bastard had married prior to the passage of this Act, they had thereby cut off all means whereby their child could ever afterwards be legitimated?

The case of *Sleigh* v. *Strider,* 5 Call (Va.) 439, decided in 1805, is nearly all fours with the instant case. In that case William Hall devised lands to his son Richard "during his natural life, and no longer, and after to his eldest son, and his heirs forever; but if no male issue, to his eldest daughter, and her heirs forever." Richard Hall had a natural son named Thomas Hall born in 1776, and in 1778 married the mother and recognized him as his child until the death of the father in 1798. The father and son, by deed conveyed the lands to defendants. The father afterwards died without ever having any other son, but leaving several daughters, the eldest of whom brought suit for these lands claiming them under the above-named clause in her grandfather's will. Plaintiff contended that Thomas Hall, the son of Richard, being born out of wedlock and before the Act of 1785, was not the eldest son of Richard Hall in a legal sense, and consequently could neither take as heir or devisee under the will. The statute in Virginia enacted in 1785 provided that "where a man, having, by a woman, one or more children, shall afterwards intermarry with such woman, such child, or children, if recognized by him, shall thereby be legitimated." The court held that the marriage and recognition of Thomas Hall, although before the enact-

ment of the statute legitimated him, saying, "The law intending to provide for all cases generally, this arrangement of the sentence was necessary to embrace every possible case of the kind; and was meant not only to encourage marriages after the passing of the law, but to protect and provide for the innocent offspring of indiscreet parents, who had already made all the atonement in their power, for their misconduct, by putting the children, whom the father recognized as his own, on the same footing, as if born in lawful wedlock." That case seems almost stronger than the instant case for the words in the statute of Virginia "shall thereby be legitimated" could, with considerable force, be urged as applying to marriages solemnized only after the passage of the Act, while the language of our statute "become legitimate" and "are entitled," etc., implies marriages both before and after the enactment.

In *Rice* v. *Efford,* another Virginia case, decided in 1808, reported in 3 Hen. & M., p. 225, the court of that state again had occasion to construe the statute relating to the legitimating of bastards. In that case the court held that an illegitimate child, born before the enactment of the statute of parents who intermarried also before such enactment, and the father had recognized his son after the passage of the Act, was legitimate. Tucker, J., who wrote the opinion in *Sleigh* v. *Strider, supra,* based his opinion in this case on the authority of *Sleigh* v. *Strider* as well as on the authority of *Stones* v. *Keeling,* decided in May, 1804. In a concurring opinion agreeing with the rest of the court Roane, J., stated that the statute applied only to cases where the father had died posterior to the Act. In the case of *Stevenson* v. *Sullivant,* 5 Wheat. 207, the Supreme Court of the United States held that under the statute of Virginia the recognition required by the father must have been posterior to the

enactment of the law, saying in that respect (p. 260):
"It would seem to be most reasonable, so to construe the
law, as to enable the father to perceive all the conse-
quences of his recognition at the time he made it."

None of the statutes of other states that have come
to our attention are identical with that in this jurisdic-
tion, hence, cases from other jurisdictions are of little
aid in the construction of our statute. It is apparent,
however, that by the weight of authority, statutes legiti-
mating bastards, being highly remedial in their nature,
are to be accorded a liberal construction with a view to
carrying out the legislative intent. "This remedy pro-
vided by the law for illegal marriages, and for the bas-
tardy consequent thereto, must be liberally construed to
advance the remedy, and extend the relief contemplated
by the law" (*Smith* v. *Perry,* 80 Va. 563, 568); and the
Supreme Court of the United States in *Kealoha* v. *Castle,*
*supra,* refers to the fact that in many states "statutes of
similar character have been given a broad construction,
and where exceptions have not been stated none have
been implied." "Such statutes being remedial should
receive a liberal construction" (7 C. J. 951, citing *Haddon*
v. *Crawford,* 97 N. E. 811). "These statutes have also
been held to operate in a retrospective sense to the extent
of legitimating those whose parents had married before
the passage of the act" (7 C. J. 952, citing *Brower* v.
*Bowers,* 1 Abb. Dec. (N. Y.) 214; *Sleigh* v. *Strider,*
*supra*). "Statutes intended to legitimate the issue of a
marriage otherwise void are remedial in their nature and
may properly be applied retrospectively" (7 C. J. 948).

As a matter of correct English, what does the statute
under consideration mean? What was the intention of
the legislature when it declared: "All children born out
of wedlock * * * *become* legitimate on the marriage of the
parents with each other and *are* entitled to the same

rights as those born in wedlock"? If an expert writer had wished to convey the universal idea that all children born out of wedlock, whose parents had married either before or after a given event, were to be legitimated, what language would he have employed? It is perhaps conceivable that a trained lawyer, having in mind the point under discussion, might have used a different form of expression and have written the statute thus: "All children born out of wedlock * * * whose parents *have intermarried or shall hereafter intermarry shall become* legitimate *and shall be* entitled," etc. It appears to be the contention of the intervenors that if the statute is to be given the construction contended for by appellee it should have been framed in some such terms. We cannot agree with this narrow construction. The statute is broad in its terms. It contains no limitations of conditions and applies to all illegitimates. The legislature has not seen fit to make any exception to its operation, and yet we are asked by intervenors to interpolate into the statute an exception to its operation. As was said in *Blythe* v. *Ayres,* 96 Cal. 532, 563, in construing a statute somewhat similar to ours: "This section takes a wide range; its operation is not confined within state lines; it is as general as language can make it; oceans furnish no obstruction to the effect of its wise and beneficent provisions; it is manna to the bastards of the world." The statute is clearly intended to apply to all persons coming within the class for whose benefit it was enacted and without regard to whether the marriage required was prior or posterior to the passage of the Act. Any other construction would in our opinion be forced. The use by the legislature of the words "become legitimate" and "are entitled to" in the present tense was no doubt intentional, such words denoting the expression of a general, universal truth, true of the past as well as of the future.

Such usage is common and is recognized by grammarians as the correct form of expression for the purpose intended. Had an expert writer been seeking for a precise form of expression to exclude cases in which the marriage of the parents had already occurred, he undoubtedly would have felt it necessary to use such expressions as "hereafter," "shall become," "shall be entitled," etc., and, instead of saying as in this statute "become legitimate" and "are entitled" he would have said "shall become legitimate" and "shall be entitled;" and even so, without entirely changing the form of the statement, such suggested terms would have inadequately expressed the qualification intended. To give the statute under consideration the construction contended for by the intervenors we would be compelled to depart from both the form and language used by the legislature and construe the statute as though it read: "All children born out of wedlock * * * whose parents *shall hereafter* intermarry *shall thereby become* legitimate and *shall be* entitled to the same rights as those born in wedlock." We feel that this court is not at liberty to interpolate so much both of form and of language into the statute and that the language used by the legislature clearly and adequately expresses the intent that the benign provisions of the Act should be extended to all classes covered by the Act without regard to the date of the marriage of the parents.

That courts look with disfavor upon statutes *not remedial in their nature* for which retrospective operation is claimed is true, this being on the theory that retrospective laws are often, if not usually, unjust and tend to disturb rights that have become vested. But the statute involved in the case at bar is not unjust, it does not interfere with vested rights, and is highly remedial in nature.

For the foregoing reasons the decree appealed from is affirmed.

*Prosser, Anderson & Marx* and *A. E. Steadman* for complainant.

*Lightfoot & Lightfoot* for respondent Gleason.

*F. Schnack* for appellant Makaiwi.

*Huber & Kemp* for all other appellants.

### DISSENTING OPINION OF PERRY, C. J.

In 1866 a law was passed reading as follows: "All children born out of wedlock are hereby declared legitimate on the marriage of the parents with each other and are entitled to the same rights as those born in wedlock." L. 1866, Act 1; Comp. L. 1884, p. 427; C. L. 1897, Sec. 1876; R. L. 1905, Sec. 2288. In 1880 in the case entitled *Kekula* v. *Pioeiwa,* 4 Haw. 292, the supreme court of Hawaii held that the statute just quoted did not apply to the offspring of an adulterous intercourse and the ruling was reaffirmed in *Kealoha* v. *Castle,* 17 Haw. 45, decided in 1905. In 1907 the legislature, doubtless having in mind the decisions in the *Kekula* and *Kealoha* cases, amended the Act of 1866 so as to have it read as follows: "All children born out of wedlock, irrespective of the marriage of either parent to another, become legitimate on the marriage of the parents with each other and are entitled to the same rights as those born in wedlock." The statute as so amended is still in force.

The claim of the complainant is that she was legitimated by the Act of 1907 and is therefore the "lawful issue" of the grantor within the meaning of the deed of trust and is the taker of the remainder created by the deed to take effect upon the grantor's death. Evidence was adduced of recognition of Helen by the grantor in his lifetime as his daughter; but there is nothing in the statute giving to such recognition any legal significance. The legitimacy, if any, arises purely out of the marriage

of the parents to each other and not out of any recognition.

So, also, of the claim that there is parol evidence before the court that the grantor not only recognized Helen as his daughter but also treated her as a father should and actually intended her as the taker of the remainder. There is no doubt that it is the intent of the creator of a trust that is to be sought in the construction of the instrument by which the trust was created; but it is the expressed intention, and not any unexpressed intention, that prevails. Nowhere in the instrument under consideration was any mention made of Helen by name. The only description of the donee or donees of the remainder is that they are to be "the lawful issue" of the grantor. The ultimate question is, was Helen the "lawful issue" of the grantor? She was not such when she was born. Was she made such by the Act of 1907?

If the Act of 1907 is construed as applying to marriages occurring before its passage and to have the effect of legitimating children born of parents so marrying it will be given a retrospective operation. So, also, in the case of children who were born illegitimate and who continued illegitimate, in spite of such marriages, at least up to 1907, it will have the effect of altering the rights of such children and the obligations at least of their fathers towards them. This is not a mere statute of inheritance. It involves other rights and duties, as between parents and children.

There can be no doubt at this day that it is an ordinary rule of construction that a statute is not to be given a retrospective operation unless its language clearly shows that that was the intention of the legislators. "It is a rule of statutory construction that all statutes are to be construed as having only a prospective operation, unless the purpose and intention of the legislature to give

them a retrospective effect is expressly declared or is necessarily implied from the language used. In every case of doubt the doubt must be solved against the retrospective effect." 36 Cyc. 1205-1208. "It is a principle which has always been held sacred in the United States, that laws by which human action is to be regulated look forwards, not backwards; and are never to be construed retrospectively, unless the language of the Act shall render such construction indispensable." Marshall, C. J., in *Reynolds* v. *McArthur,* 2 Pet. 417, 434. "It is a sound rule of construction that a statute should have a prospective operation only, unless its terms show clearly a legislative intention that it should operate retrospectively." Cooley, Const. Lim., 7th ed., p. 529. "It is the proclamation of both" (principle and authority) "that a statute should not be given a retrospective operation unless its words make that imperative." *Shwab* v. *Doyle,* 258 U. S. 529, 537. "While, in the absence of a constitutional inhibition, the legislature may give retrospective operation to a statute, the presumption is that prospective operation only is intended and it is a rule of construction that a statute is not to be construed to act retrospectively or to affect rights vested prior to its passage, unless no other meaning can be given it, or unless the express or necessarily implied intention of the legislature cannot be otherwise satisfied." 11 Ency. U. S. Rep. 126, 127. "Words in a statute ought not to have a retrospective operation, unless they are so clear, strong and imperative that no other meaning can be annexed to them or unless the intention of the legislature cannot be otherwise satisfied. This rule ought especially to be adhered to, when such a construction will alter the pre-existing situation of parties, or will affect or interfere with their antecedent rights, services and remuneration; which is so obviously improper, that nothing ought to uphold and

vindicate the interpretation, but the unequivocal and inflexible import of the terms, and the manifest intention of the legislature." *United States* v. *Heth,* 3 Cranch 398, 413. "In construing statutes in regard to whether their action is to be prospective or retrospective, all the adjudicated cases and all the text-writers with unbroken uniformity unite in declaring 'that they are to operate *prospectively* and not otherwise unless the intent that they are to operate in such an unusual way, to-wit, retrospectively, is manifested on the face of the statute in a manner altogether free from ambiguity.'" *Leete* v. *Bank,* 115 Mo. 184, 195. See also *Lewellyn* v. *Frick,* 268 U. S. 238, 251, 252; 26 A. & E. Ency. L. 692, 693; *Twenty per Cent Cases,* 87 U. S. 179, 187. This is as true of an amendatory act as it is of any other statute. "An amendatory statute has no retroactive effect unless such appears to have been the legislative intent." *Dodin* v. *Dodin,* 44 N. Y. S. 800, 802. "An amendatory act, like other legislative enactments, takes effect only from the time of its passage and has no application to prior transactions unless an intent to the contrary is expressed in the Act or clearly implied from its provisions." 26 A. & E. Ency. L. 712.

As long ago as 1859 our legislature recognized this general principle of construction. At that time a law was passed (C. C. 1859, Sec. 5) reading as follows: "No law shall have any retrospective operation." That law has ever since continued in existence. It is now R. L. 1925, Sec. 5. It is true that this is not a constitutional provision and may, therefore, in the enactment of any law, be disregarded by the legislature; but unless the language of a subsequent Act clearly discloses an intention to disregard it its principle applies. That is why it is retained in the statute books.

Measured by these standards, it cannot properly be held, in my opinion, that the Act of 1907 applies to

marriages solemnized before its enactment,—in other words, that under that statute marriages which occurred prior to its enactment had the effect of legitimating children theretofore illegitimate. While the language used in the statute might have been, in point of clearness, improved upon, it seems clear that the intent of the legislature was to give the Act a prospective operation only and to cause thereby only those children to be legitimated whose parents should be married to each other after the passage of the Act. The language used is more in conformity with that purpose than it would be with the purpose of making it applicable to past marriages as well as future marriages. The expression is that children "become" legitimate on the marriage of the parents, not that they have become and will hereafter become legitimate. The expression is that they "are entitled" to the same rights as those born in wedlock, not that they have been entitled since the date of the marriage of their parents and will be hereafter so entitled. It would have been a very simple matter, if that had been the intent of the legislature, for the declaration to have been made that all children born out of wedlock become legitimate on the marriage of the parents with each other irrespective of the date of such marriage and that the children have been and will be entitled to the same rights as those born in wedlock irrespective of the date of the marriage; or the statement could have been added that "this Act shall be given a retrospective operation." In section 2 of the Act of 1907 the legislature expressly declared that "this Act shall take effect upon its approval," which was the equivalent of saying that prior to its approval it had not been and would not be in effect; but if the retrospective operation now asked by the complainant is given to the statute children who under the law in force prior to the approval of the Act of 1907 had been deemed to be

and in law were illegitimate in spite of the marriage of their parents with each other became legitimate and such legitimation would exist from the date of the marriage of their parents and not from any later date. Even Kekula and Kealoha, who in the Hawaiian cases above cited were judicially declared not to have been legitimated by the marriage of their parents, would be legitimated by the same marriage if this construction of the law of 1907 were adopted. Until the end of 1906, six years after the marriage of her parents, the complainant was indubitably illegitimate. All attorneys would have so advised and every court would have so held. The rights and obligations as between her and her natural parents were those accruing from that status. But under the prevailing construction of the Act of 1907 the legal significance of the marriage and the child's consequent status were materially changed dating from 1900.

I feel unable to join in the view that the use of the present tense in the two verbs appearing in the statute under consideration is a clear indication that the legislature intended that the law should apply to marriages which were solemnized before its enactment as well as to marriages solemnized after its enactment or that the use of the present tense is the method peculiarly adapted as a matter of correct English to express the thought that a retrospective as well as a prospective operation is intended. To my mind the use of the present tense in this short enactment indicates no more than that the legislature is thereby stating a rule of action. Rules of action are often stated in the present but they are not ordinarily understood for that reason to be rules of action intended for the past but are ordinarily understood to be rules of action for guidance in the future only. Many illustrations might be given. A few will suffice. If a statute, altering the rule of the past, were to be enacted providing

Perry, C. J., dissenting.

that "all husbands upon their divorce become obligated to pay to their wives one-third of their income" no court would hold that the rule applied to divorces already had. Descending for a moment to less important matters, if a new rule in baseball should be adopted providing that "the batter is out upon the fourth strike" or "the batter goes to first upon getting five balls" no one would suppose for a moment that any retrospective operation was intended for the rule. If a new statute should say that "every governor of this Territory becomes entitled, upon completing five years of service as such, to a pension for life in the amount of one-third of his yearly salary," the provision would be clearly prospective only and would not apply to governors who had completed five years of service prior to its enactment. A provision that "all persons become trespassers upon entering unoccupied government lands without the permission of the superintendent of public lands and are liable in damages for such entry" would be prospective only. If an earlier statute should provide that "all persons become of the age of legal majority upon attaining the twentieth year" and an amendatory statute should provide that "all persons become of the age of legal majority upon attaining the eighteenth year," liability for the acts or omissions of a minor eighteen years of age prior to the passage of the amendatory law would not be in any wise altered or affected by the adoption of the amendment. In each of these instances the present tense is used but no intent, as it seems to me, is thereby disclosed, clear or otherwise, to have the law applied to past transactions. Another illustration may be helpful. If hereafter a law should be passed providing that "all children born in lawful wedlock become illegitimate upon the divorce of their parents and are entitled to none of the rights of legitimate children" all would doubtless agree that the new

law would not injuriously affect the rights of children whose parents were divorced before the adoption of the amendment. The odious nature of such a law might, perhaps, have some effect upon courts in construing it but that would be a consideration additional to that of determining what the language means as a matter of correct English. Solely from the grammarian's point of view, the effect of the present tense of the verb "become" in the wise law and in the unwise law would be the same.

It has often been said that the remedial nature of a law tends towards a liberal construction but that can only be, as it seems to me, in cases of close questions of construction. No such close question exists here. There is nothing in the language used, as I read it, to take the statute out of the ordinary rule of construction, that rules of action—for that is what laws are—are intended to look to the future and not to the past,—to operate prospectively and not retrospectively.

Adjudicated cases in point are rare. Those in which statutes declaring that adopted children shall have the same rights of inheritance as natural children have been construed as referring to adopted children irrespective of whether the adoption was before or after the enactment of the Act, are not helpful because in those instances the grant is of the right of inheritance and does not purport to be otherwise than prospective only. Such statutes have not been held to apply to the estates of persons dying before the enactment of the Act. In *Stevenson* v. *Sullivant,* 5 Wheat. 207, 258, a statute of Virginia of January 1, 1787, declared that "where a man, having by a woman one or more children, shall afterwards intermarry with such woman such child or children, if recognized by him, shall be thereby legitimated." Children whose parents intermarried prior to the passage of the statute and were recognized by their father prior to the enact-

ment were held not to have been legitimated by the marriage and recognition. The court said: "To render the past recognition of the father effectual to give inheritable blood to his children, who were then illegitimate, and incapable of taking the estate by descent, either from him or from those to whom it should descend, would in some respects, at least, partake of the character of a retrospective law. It would seem to be most reasonable, so to construe the law, as to enable the father to perceive all the consequences of his recognition at the time he made it."

In *Brown* v. *Belmarde*, 3 Kans. 35, 46, a case involving illegitimacy, the court said: "No recognition prior to the death of Lavonture, however general or notorious, nay, although it were in writing, could legitimate the child if born out of lawful wedlock or impart to it a heritable quality. At the time the recognition must have taken place there was no law in force giving to that act such an effect. To give it any legal effect whatever there must have been some law in existence prescribing what that effect should be. The act of 1859 cannot reach back and attach to an action, which at the time of performance was entirely indifferent, such grave, legal consequences."

With reference to a statute of Iowa which provided that illegitimate children "shall inherit from the father, whenever the paternity is proven during the life of the father, or they have been recognized by him as his children," the court said in *Hartinger* v. *Ferring*, 24 Fed. 15, 17: "If, however, it be held that the statute is intended to give force to acts of recognition performed before the adoption of the code, then we give an effect to an act which it did not legally have when performed. The statute would thus be given a retroactive effect, and an act which, when done, had no legal significance and was not intended nor understood by the parties to it to

affect any right of inheritance, would be held to confer such a right. Whatever may be said of the power of the legislature to thus attach to an act done a legal significance which it did not possess when done it is clear that it will not be presumed that it was the intent of the legislature to make the statute retroactive in this particular, unless such intent is clearly established by the language of the statute. The ordinary presumption is that statutes are intended to be prospective alone in their operation." See also *Morgan* v. *Perry,* 51 N. H. 559. To hold the present Act applicable to the marriage which occurred in September, 1900, would be to attach to the marriage a legal significance and operation which it did not possess when it was solemnized and would result in denying to the grantor the ability to perceive all the consequences of his act in joining in the marriage.

Other cases there are which perhaps tend in some degree to the opposite view. The foregoing, however, is the reasoning that appeals to me as sound.

In my opinion, the Act of 1907 was a rule of action expressed in an ordinary way, intended for the future only and not applicable to past marriages, and the complainant was not legitimated by the marriage of her parents, was not the "lawful issue" of her father and did not take the remainder under the deed of trust.