KEALOHA *v.* CASTLE.

APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF HAWAII.

No. 230. Submitted April 28, 1908.—Decided May 18, 1908.

The courts of Hawaii having prior to the annexation construed the statute of May 24, 1866, legitimatizing children born out of wedlock by the subsequent marriage of the parents as not applicable to the offspring of adulterous intercourse, and the organizing act of the Hawaii territory having continued the laws of Hawaii not inconsistent with the Constitution or laws of the United States, this court adopts the construction of the Hawaiian statute given by the courts of that country.

While in different jurisdictions statutes legitimatizing children born out of wedlock by the subsequent marriage of the parents have been differently construed as to the application thereof to the offspring of adulterous intercourse, in construing such a statute of a Territory this court will lean towards the interpretation of the local court.

The construction of a statute affixed thereto for many years before territory is acquired by the United States should be considered as written into the law itself.

An *ex parte* and uncontested proceeding construing a statute and directing payments in accordance with such construction cannot be pleaded as *res judicata* in a subsequent contested proceeding.

17. Hawaii, 45, affirmed.

BY the last will of Joshua R. Williams, duly admitted to probate by the proper court of the Hawaiian Islands on July 30, 1879, William R. Castle, the appellee, was appointed trustee to collect and manage the estate of said Williams. `After the decease of Williams, Castle duly qualified and entered upon the performance of the trust. He was charged with the duty of paying the income of the estate to named beneficiaries during life, and on the decease of any of such beneficiaries the share was to be paid to the children, and the distribution. of the principal of the estate was postponed to a remote period. One of the named beneficiaries was a son, John. He married, and his wife bore him a son, Othello. While John was living in lawful wedlock another woman bore him two children, Annie, born in 1879, and a son, Keoni, born in 1883. Some years subsequent to 1883, his first wife having died, John married the mother of his two illegitimate children. John died about 1891, leaving his second wife surviving him, as also the child Othello by the first wife and the two illegitimate children re-ferred to. One of these, Annie, married one Kealoha, and in 1905, after she and her brother Keoni had reached their majority, they filed in the Circuit Court of the First Judicial Circuit, Territory of Hawaii, a bill against Castle for an accounting, in which substantially the facts above stated were set forth. It was also averred that although, on an application by the trustee, he had in 1891 been instructed by a justice of the court to make payment to the said Annie and Keoni of their shares, on the theory that they had been legitimated by the marriage of their parents, the trustee had ceased to make said payments and denied that they were entitled to receive any. portion of the income or to share in the principal of the estate. It was prayed that. the trustee might be ordered to render an account and be compelled to make payment .of the

portion of the income to which it might appear the petitioners were entitled. A demurrer was filed to the bill, and the question whether the demurrer should be sustained was reserved to the Supreme Court of the Territory, it being stated in the certificate that the following question of law was raised by the demurrer, upon which the court was in doubt, viz:

"Whether or not said demurrer should be sustained or overruled, which involves the construction of section 2288, Revised Laws of Hawaii, and its application to the facts as alleged in the bill herein; that is to say, were the petitioners made legitimate by the marriage of their parents subsequent to their birth and thereby rendered capable of inheriting from their father, J. R. Williams, deceased."

The Supreme Court held that the demurrer ought to be sustained, and upon remittitur the Circuit Court entered a decree sustaining the demurrer and dismissing the petition with costs. This decree having been affirmed by the Supreme Court of the Territory, the case was brought here by appeal. 17 Hawaii, 45.

*Annie Kealoha* and *Keoni Williams,* appellants, for themselves.

*Mr. A. G. M. Robertson* and *Mr. David L. Withington* for appellee.

. MR. JUSTICE WHITE, after making the foregoing statement, delivered the opinion of the court.

The assignments of error assailing the action of the Supreme Court of the Territory propound two questions for our consideration:

1. Was it error to hold that, as the appellants were the issue of an adulterous relation between their father and mother at a time when the father was the lawful husband of another, they were not made legitimate by the marriage of their father

and mother after the death of their father's first lawful wife, and by force of the statutes of Hawaii?

2. Was it error to hold that the instruction given to the appellee in 1891, to make payment to the appellants of a portion of the income of the trust property, the title to which is in dispute, in this suit, on the theory that they had become legitimate by the subsequent intermarriage of their parents, did not make the matters in dispute *res judicata* during the entire administration of the said trust property?

*As to the first question.* The law in force at the time of the death of the testator Williams, in 1879, which, on the marriage of the parents, legitimated children born out of lawful wedlock was passed on May 24, 1866 by the legislative assembly of the Hawaiian Islands, and appears as the first statute in the session laws for 1866–67. It is also contained in Comp. Laws, 1884, p. 427, and Civil Laws of 1897, § 1876. The statute was carried into the Revised Laws of 1905 as § 2288, in similar phraseology, and reads as follows:

"All children born out of wedlock are hereby declared legitimate on the marriage of the parents with each other, and are entitled to the same rights as those born in wedlock."

In the year 1880, in *Kekula* v. *Pioeiwa*, 4 Hawaii, 292, the proper interpretation of the act of 1866 was directly involved. The action below was in ejectment. Plaintiff was the issue of a woman by a man not her husband, he being then married to another. The wife having died, the father married the mother of the plaintiff. The right of the plaintiff to recover depended upon the fact of his constructive legitimacy. It was held, however, that the act of 1866 did not apply to the case of an adulterous intercourse, and that the offspring of such intercourse could not inherit from the father. While it was observed in the opinion that to enforce a contrary doctrine would be opposed to good morals, it is plain that the conclusion reached was that the statute was adopted by the legislative department of the Hawaiian government with the intention that it should have the restrictive effect given to it by the court. In other

words, it was decided that the statute should not be broadly construed, as was claimed on behalf of the plaintiff. The statute was not afterwards modified, the decision in the *Kekula case* has never been disapproved or doubted by the court which rendered it, it has undoubtedly become a rule of property, and was followed in the instant case. On the coming of the Hawaiian Islands under the sovereignty of the United States this statute was in force, with the construction given to it by the highest court of the country, and its continued enforcement was in effect ordained by the organic act, which, in § 6, provided, "That the laws of Hawaii, not inconsistent with the Constitution or laws of the United States or the provisions of this act, shall continue in force, subject to repeal or amendment by the legislature of Hawaii or the Congress of the United States."

In Kentucky, in 1887 (*Sams v. Sams*, 85 Kentucky, 396, where the facts were somewhat similar to those in the instant case), it was held:

"Legislation admitting illegitimate children to the right of succession is undoubtedly in derogation of the common law, and should be strictly construed, and hence it has generally been held that laws permitting such children, whose parents have since married, to inherit, do not apply to the fruits of an adulterous intercourse."

In other jurisdictions, however, statutes of similar character have been given a broad construction, and where exceptions have not been stated none have been implied. *Brewer* v. *Blougher*, 14 Pet. 178; *Hawbecker* v. *Hawbecker*, 43 Maryland, 516; *Ives* v. *McNicoll*, 59 Ohio St. 402. And see *Carroll* v. *Carroll*, 20 Texas, 732; *Munson* v. *Palmer*, 8 Allen, 551; *Adams* v. *Adams*, 36 Georgia, 236; *State* v. *Lavin*, 80 Iowa, 556. But, under the circumstances to which we have hitherto called attention, we do not think we may enter into a consideration of these conflicting decisions. Even in the case of a law adopted by an organized Territory of the United States at a time when it was subject to the control of Congress, the rule is that we

will lean towards the interpretation of a local statute adopted by the local court, and that where a statute of a Territory has been in existence for a considerable time, and been construed by the highest court of the Territory, even apart from its re-enactment, weight attaches to the construction given by the local court. *Copper Queen Mining Co.* v. *Arizona Territory,* 206 U. S. 474. The case at bar, however, more cogently calls upon us not to disregard the construction given to the statute by the highest court of Hawaii. Here the law in question was passed while Hawaii was an independent government, and its meaning was declared by the court of last resort of that government, and, as we have said, that law as thus construed was given recognition by the organic act. The subject with which the law deals, the rights which may have come into existence during the more than forty years in which the statute has been in force, admonish us that we may not overthrow the meaning given by the court of last resort of Hawaii, and which has prevailed for so many years. Indeed, as the construction affixed to the statute many years before the islands were acquired was final, in effect that construction had entered into the statute at the time of acquisition and must by us be considered as if written in the law.

*As to the question of res judicata.* It was averred in the petition in the Circuit Court as follows:

"IV. That in the year 1891 the said respondent, being uncertain as to the propriety of paying over to the said children, or to any one in their behalf, their share or any portion of the income of the estate of said J. R. Williams, deceased, applied to the Supreme Court in probate, said court at that time having jurisdiction at chambers in matters of probate, for instructions as to the standing of said children, and that he was instructed and authorized by the Honorable Richard F. Bickerton, one of the justices of said court, to make payment to the said children on the theory that they had become legitimate by the subsequent intermarriage of their parents, and that thereafter said respondent, as trustee, duly made such pay-

ments to said Kahalauaola, the mother of said children, in their behalf, until within a year or two past, since which time respondent has utterly refused to make payments to the said children, or either of them, or to any one in their behalf, claiming that they were not, and are not now, entitled to receive any portion of the income, or to share in the principal of the said estate of J. R. Williams, deceased."

These averments cannot bear any other construction than that the application referred to was an *ex parte* proceeding. The Circuit Court of the Territory, we think, correctly disposed of the claim of *res judicata* by the following ruling:

"As to the instruction by Mr. Justice Bickerton, it does not appear that any notice was given of the proceedings, or that there was any contest or issue made concerning the legitimacy of children."

*Affirmed.*