## TERRITORY OF HAWAII v. GAY et al.*
### No. 6307.

Circuit Court of Appeals, Ninth Circuit.
Aug. 29, 1931.

Thompson, Beebe & Winn, Frank E. Thompson, Eugene H. Beebe, Montgomery E. Winn, and M. K. Ashford, all of Honolulu, Hawaii, for appellant.

Robertson & Castle, A. G. M. Robertson, Arthur Withington, and J. G. Anthony, all of Honolulu, Hawaii, for appellees Robinson.

Prosser, Anderson, Marx & Wrenn, Mason F. Prosser, Robbins B. Anderson, Benjamin L. Marx, and Heaton L. Wrenn, all of Honolulu, Hawaii, for appellee Hawaiian Sugar Co.

Before WILBUR and SAWTELLE, Circuit Judges, and NETERER, District Judge.

WILBUR, Circuit Judge.

This action was brought by the territory of Hawaii to enjoin the further diversion of the Koula stream and the Manuahi stream, tributaries of the Hanapepe river, in the district of Kona, island and county of Kauai, territory of Hawaii. These waters have been diverted for about forty years (since 1891) for the purpose of irrigating a sugar plantation belonging to the Hawaiian Sugar Company, Limited, a lessee of appellees Gay & Robinson. The trial court having denied the appellant's prayer for an injunction, an appeal was taken to the Supreme Court of the territory, which affirmed the decree. From that decision this appeal was taken by the territory of Hawaii. Before a further statement of the facts we will consider the contention of the appellees that the appeal to this court was not properly taken and that this court is therefore without jurisdiction of the appeal, and consequently that their motion to dismiss should be granted.

██ A petition for an appeal was prosecuted in due time to the Supreme Court of the territory, and was allowed by an Associate Justice of that court. Later the Chief Justice allowed extensions of time to perfect the appeal, in pursuance of stipulations by the parties therefor. These orders were made by the Chief Justice during the term of court, but after the thirty-day period for a petition for appeal. The contention of the appellees may be summarized as follows: A writ of error must be allowed by the Chief Justice of the territorial Supreme

*Certiorari denied 52 S. Ct. 131.

Court. Organic Act of Hawaii, 31 Stat. 141, 158, c. 339, §.86; 36 Stat. 1087, 1158, c. 231, § 246, amended 38 Stat. 804, § 2; section 999, Rev. St., now 28 USCA § 868; Bartemeyer v. Iowa, 14 Wall. 26, 20 L. Ed. 792; Havnor v. New York, 170 U. S. 408, 18 S. Ct. 631, 42 L. Ed. 1087. Although the writ of error was abolished by Act of January 31, 1928 (28 USCA § 861a), and although it was not applicable to cases in equity at the time it was abolished, it has been nevertheless, extended to cases in equity by the requirement of 28 USCA § 861b, 45 Stat. 466, approved April 26, 1928. Consequently it is urged that, as the requirement that the Chief Justice of the Supreme Court of the territory was the only member of the court authorized to issue a writ of error, he now must be the only one authorized to allow an appeal. It is sufficient for the purposes of this case to point out that the requirement of the Act approved April 26, 1928 (section 861b, 28 USCA) applies only to appeals which are substituted for the abolished writs of error; that is, to actions at law. This is sufficiently clear from the terms of the statute, and it already has been so construed. Ross et al. v. White et al. (C. C. A.) 32 F. (2d) 750. We conclude that, the petition for appeal having been filed in time and having been treated as effective, both by the parties and by the Chief Justice, during the term in which the decision was rendered, the appellees having appeared hereon, the motion to dismiss should be denied.

We turn to a further statement of the facts on the merits. Preliminarily we shall avoid as far as may be the use of terms peculiar to the Hawaiian law and custom and state the facts in more familiar, if less apt and accurate, terms. The watershed of the Hanapepe river is about fifteen miles long and from two to five miles in width. The highest point of the division of the watershed is about one mile. At the upper or north portion the rainfall is phenomenal—between 400 and 500 inches per annum. To the sea the rainfall is comparatively negligible. The Koula stream joins the Manuahi stream about halfway to the sea to form the Hanapepe river. The watershed of the Koula stream, known as the ili of Koula, is owned in fee simple by the appellees Gay & Robinson; the watershed of the Manuahi, known as the ili of Manuahi, is also owned in fee simple by the same appellees. Immediately below these lands are the lands of the territory of Hawaii traversed by and riparian to the Hanapepe river. It is desired by the territory to secure for its lower riparian lands the water now diverted by the appellees' dams to irrigate lands in another watershed. The territory claims all the water naturally flowing in the Hanapepe river, by virtue of the rights of the King of Hawaii, ceded to the United States, and by it conferred in trust upon the territory. Such rights are therefore based upon the customs and governmental system of the kingdom from its remotest history. If it should be held that this claim to all the water of the river is untenable, then the territory claims that as a riparian owner it is, under the principles of the common law adopted by the Hawaiian Legislature, subject to Hawaiian laws, judicial precedents, or Hawaiian usage (section 1, Rev. Laws of Hawaii 1925), entitled to a reasonable use of the stream along with the upper and adjacent riparian owners. The appellees agree with the contention of the territory that by Hawaiian custom the water in a flowing stream belongs to the owner of the land upon which it rises or originates. Upon this theory the appellees claim that, as the water they divert arises upon or originates on or in the ili of Koula or the ili of Manuahi, they have the right to use the water as they see fit, regardless of the claims of those below on the stream, with certain exceptions of appurtenant and prescriptive claims not involved in this litigation. On the other hand, the territory claims that, as original owner of the Hanapepe river, it owns the entire flow of the stream, and that the title to the water remains in the territory notwithstanding the grant in fee simple of the upper riparian lands to appellees. The difficulty which gives rise to the conflict between the successors of the King on the one hand and his grantees on the other hand arises from the fact that, when the King in 1845 decided to confirm all the land holding privileges of his subjects and give to the grants then made the effect of a fee-simple title, the Commission appointed in 1846 to determine these rights in grants similar to those now owned by appellees did not mention or apportion water rights, so that we must turn to the ancient customs of the kingdom to ascertain the effect of the original allotment of the lands of the King. Be it here stated that it is conceded that until the year 1845, all the land and water in the kingdom belonged, in theory at least, to the King. The King allotted certain areas to his subordinates, and these in time allotted or apportioned parts thereof to subchiefs or agents. On the other hand, the King was free to make allotments within the larger allotments already assigned. The rights of

the suballottee varied according to whether the suballotment was made by the King, and thus in derogation of the right theretofore allotted to the first allottee, or by the chief of the first and larger allotment.

In the case at bar it is conceded that the lands of the appellees are suballotments made by the King within a larger allotment, known as the Ahupuaa of Hanapepe. How the Ahupuaa of Hanapepe was formed and to whom it was first granted or allotted, if at all, does, not appear from the record, but it was confirmed to the King in 1846, and it is conceded that the territory in the case at bar stands in the position of a chief or allottee of the larger tract, known as the Ahupuaa, and that it has the fee-simple title to the crown or government lands above referred to as being riparian to the Hanapepe river.

The question thus presented by the record is this: What are the rights of a suballottee of land to water originating thereon, where the suballotment is made by the King, in derogation of the original allotment or the larger tract, on whose original allotment the water also originates? If the suballotment by the King has equal dignity and standing with the original allotment, it would seem that the water originating on the suballotment would necessarily attach to or remain with the land in the hands of the new suballottee, as against the original allottee, although we express no opinion on that subject. In other words, it would seem that the water arising on his land as well as the land is by the suballotment taken from the original allottee, and given to the suballottee. It is stated in the briefs that the land-holding system of the kingdom of Hawaii before 1845 was a feudal system. That it has some resemblance to the European feudal system is clear, but the parties have not attempted to use common-law feudal terminology in the discussion of the rights of the parties, and it is impossible to believe that the systems were in any sense identical. The similarity lies almost wholly in the asserted or conceded right of the sovereign, the assignment of his land to his favorite subordinates, and the payment of revenue or tribute, and the comparative insignificance of the individual members of the community and their rights.

In our further statement we will use the terminology of the parties and of the Hawaiian courts, stating that the allottees of the large cessions were known as Konohikis (chiefs) of an ahupuaa (large tract of land),

and that the territory is asserting, to quote from their briefs in this case, the rights of "the Konohiki of the Ahupuaa of Hanapepe," while the appellees Gay & Robinson are asserting the rights of Konohikis of the ilis of Manuahi and Koula which were ilis kupono to which we have referred as suballotments by the King. They are lands lying within the ahupuaa, or larger tract also allotted by the King.

There were two kinds of ilis, or large tracts of land, one of the ilis of the ahupuaa, a mere subdivision of the ahupuaa for the convenience of the chief holding the ahupuaa. The konohiki or chief of these ilis brought their revenue to the chief holding the ahupuaa. The other or ili kupono, also known as the ili ku, within the ahupuaa, was independent of the ahupuaa and did not pay tribute to its chief. Harris v. Carter, 6 Hawaii, 195, 206. It is admitted that the ilis of appellees are of the latter class, ilis kupono. The bill alleges that the territory of Hawaii, as konohiki of the ahupuaa is entitled to all the surplus waters of the Hanapepe river and its tributaries. By surplus water is meant the usual flow of the stream over and above prescriptive and appurtenant rights to the flow, which rights are recognized by both parties herein and are only involved in so far as they delimit the amount of surplus water. The appellees' answer alleges that the ilis of Koula and Manuahi are and always have been independent ilis known as ilis kupono, which is admitted. The further allegation that they were not a part of the ahupuaa of Hanapepe seems to have been found to be true by the trial court. On this subject the opinion of the trial court states the "ili of Koula upon which the upper waters arise, is not a portion of the ahupuaa of Hanapepe at all. Even though its boundaries may be coincident with the boundaries of the ahupuaa yet the Supreme Court of this territory has heretofore found that this ili 'was never a part of the ahupuaa.'" Referring to Territory v. Gay, 26 Hawaii, 382. The Supreme Court affirmed the decision of the trial court, one of the three justices dissenting. We refer to these opinions for a more detailed statement of the facts and the law involved in the case.

The assignment of errors, among others, includes the following: "The Court erred in holding that an ili kupono owed no tribute to the konohiki of the ahupuaa within which it lay and was subservient directly to the king." "The Court erred in holding that the konohiki of the ahupuaa was not entitled to all

the surplus waters." "The Court erred in failing and refusing to determine the ownership of the surplus normal water according to the principles of the common law." "The Court erred in holding that the question of ownership of surplus water as between the konohiki of an ahupuaa and the konohiki of an ili within the ahupuaa upon which was situated the source of the stream was not governed by the common law."

Enough has been said to show that the question involved is one of local law and custom, with which the courts of the territory are more familiar and which they are more competent to determine.

The appellant states: "We realize that in asking this court to reverse our Hawaiian court on the quality of the feudal tenure of an ahupuaa, and an ili kupono lying within the boundaries of that ahupuaa, we are asking the examination of a highly technical question of Hawaiian history and customs, and yet the point cannot, in fairness to the Territory, be waived, as the decision in the instant case has overlooked the fact that if there had been no inferiority in the ili kupono, there would have been no excuse for its existence." It is hardly true that the point was overlooked by the Hawaiian courts. They decided against the appellant on that point.

It is desirable that such questions be settled by local legislation and decision. This has been the consistent view of the Supreme Court of the United States (Kealoha v. Castle, 210 U. S. 149, 28 S. Ct. 684, 52 L. Ed. 998; Cotton v. Hawaii, 211 U. S. 162, 29 S. Ct. 85, 53 L. Ed. 131; Lewers & Cooke v. Atcherly, 222 U. S. 285, 32 S. Ct. 94, 56 L. Ed. 202; Kapiolani Estate, Ltd., v. Atcherley, 238 U. S. 119, 35 S. Ct. 832, 59 L. Ed. 1229, Ann. Cas. 1916E, 142; John Ii Estate v. Brown, 235 U. S. 342, 35 S. Ct. 106, 59 L. Ed. 259; Cardona v. Quinones, 240 U. S. 83, 88, 36 S. Ct. 346, 60 L. Ed. 538), and of this court (Ewa Plantation Co. v. Wilder (C. C. A.) 289 F. 664, 670; Territory of Hawaii v. Hutchinson Sugar Plantation (C. C. A.) 272 F. 856; Castle v. Castle (C. C. A.) 281 F. 609; Halsey v. Ho Ah Keau (C. C. A.) 295 F. 636; Notley et al. v. McMillan (C. C. A.) 16 F.(2d) 273; Honolulu Rapid Transit Co. v. Wilder (C. C. A.) 36 F.(2d) 159; U. S. Fidelity & Guaranty Co. v. Henry Waterhouse Trust Co. (C. C. A.) 11 F.(2d) 497).

Assuming that this court, even in such a question of local law and custom, should reverse for manifest error (Treat v. Grand Canyon Ry. Co., 222 U. S. 448, 453, 32 S. Ct.

125, 56 L. Ed. 265), no such error has been pointed out, and none is observed by us.

Decree affirmed.