**YOSHIZAWA v. HEWITT et al.**

No. 6371.

Circuit Court of Appeals, Ninth Circuit.

Sept. 2, 1931.

Charles B. Dwight, of Honolulu, Hawaii, for appellant.

Harry R. Hewitt, Atty. Gen., and Earl McGhee, Deputy Atty. Gen., of the Territory of Hawaii, for appellees.

Before WILBUR and SAWTELLE, Circuit Judges, and NETERER, District Judge.

SAWTELLE, Circuit Judge.

This is an appeal from a decree of the Supreme Court of the Territory of Hawaii made and entered on November 17, 1930, pursuant to an opinion and decision of the said court made and entered on the same date.

In July, 1930, hearings were begun before the board of health of the territory of Hawaii upon a complaint charging appellant with professional misconduct and gross carelessness and/or manifest incapacity as a physician and praying that his license to practice medicine be revoked. The charges arose under paragraphs 1 and 10 of section 1029 of the Revised Laws of Hawaii 1925, as amended by Laws 1925, Act 26, § 5, which provides:

"Sec. 1029. Revocation of licenses. Licenses to practice medicine and surgery may be revoked by the board of health at any time for the following causes:

"1. Procuring or aiding or abetting in procuring a criminal abortion; * * *

"10. Gross carelessness and manifest incapacity; any one or more of said causes having been proven to the satisfaction of the board of health. In case any license is revoked for any of the causes named in this section, the holder thereof shall be immediately notified of such revocation, in writing, by the board of health."

While the hearings were in progress, appellant filed a bill in the Circuit Court of the First Judicial Circuit, Territory of Hawaii, praying for an injunction to prevent appellee Tay from sitting as a member of the board and to restrain the board from proceeding further with said hearings, alleging that Tay was not entitled to sit as a member of the board of health and that the above-quoted paragraph 10 of section 1029 was unconstitutional.

Appellees demurred to said bill. The Circuit Court sustained the contentions of appellant, and enjoined appellees from further hearing or considering said charges, but upon appeal to the Supreme Court of the Territory of Hawaii the judgment of the Circuit Court was reversed, the Supreme Court holding said section 1029 to be constitutional and appellee Tay entitled to sit as a member of said board of health. From their decree arises this appeal.

Two questions are presented to us here, the first of which concerns the right of appellee Tay to sit as a member of the board of health. Section 169 of the Revised Laws of Hawaii 1925 (originally passed in 1909) provides that: "Any other officer for the performance of whose duties in his absence or illness no other provision is made by law, may, with the approval of the governor, designate some other officer in his department, bureau or office to act in his temporary absence or illness. Such designation shall be in writing. * * * Such persons so designated shall, during the temporary absence or illness of the head of such office, have all the powers of the head of such office and shall be known as the acting * * * president, as the case may be. * * * "

Section 909 of the Revised Laws of Hawaii 1925, as amended by Act 34 of the Session Laws of 1925, provides that: "There shall be a board of health for the Territory of Hawaii consisting of seven members, four of whom shall be laymen, two physicians, and the attorney general, ex-officio. * * * The President of the board shall preside at the meetings of the board, and in case of his absence, any member of the board may be chosen to preside over the meetings of the board. * * * "

Prior to the commencement of the hearings before the board, appellee Tay, at that time sanitary engineer of the board and its employee, was designated by Dr. F. E. Trotter, president of the board, with the approval of the Governor, to be acting president of the board of health while Dr. Trotter was absent. Tay sat as a member of the board, presided as president, and the Supreme Court of the Territory of Hawaii has held that he did so legally.

In view of the fact that the statutory construction here is one of purely local law, and the Supreme Court of the territory has given its interpretation thereof, we see no reason for disturbing the judgment of the latter.

"Even if the statute is ambiguous, doubt as to its meaning should be resolved in favor of the construction placed upon it by the Supreme Court of the territory. Clason v. Matko, 223 U. S. 646, 32 S. Ct. 392, 56 L. Ed. 588; Ewa Plantation Co. v. Wilder (C. C. A.) 289 F. 664, 670, and cases there cited." U. S. Fidelity & Guaranty Co. v. Henry Waterhouse Trust Co., Ltd. (C. C. A.) 11 F.(2d) 497, 499.

"* * * The construction placed upon a local law * * * by the highest court of the Territory will not be disturbed by an appellate court. Kealoha v. Castle, 210 U. S. 149, 28 S. Ct. 684, 52 L. Ed. 998; Cotton v. Hawaii, 211 U. S. 162, 29 S. Ct. 85, 53 L. Ed. 131; Lewers & Cooke v. Atcherly, 222 U. S. 285, 32 S. Ct. 94, 56 L. Ed. 202; John Ii Estate v. Brown, 235 U. S. 342, 35 S. Ct. 106, 59 L. Ed. 259; Hawaii County v. Halawa Plantation, Limited (C. C. A.) 239 F. 836; Territory of Hawaii v. Hutchinson Sugar Plantation Co. (C. C. A.) 272 F. 856; Castle v. Castle (C. C. A.) 281 F. 609; Ewa Plantation Co. v. Wilder (C. C. A.) 289 F. 664; Halsey v. Ho Ah Keau (C. C. A.) 295 F. 636." Notley et al. v. McMillan (C. C. A.) 16 F.(2d) 273.

There is no question here of the right of the territory to enact laws regulating the licensing of physicians, nor are we called upon to consider the question of whether or not the crime of abortion is sufficient for the revocation of a license. Paragraph 1 of section 1029 as amended specifically provides for revocation of a physician's license for procuring an abortion, but appellees did not choose to base their revocation of Dr. Yoshizawa's license on that ground and we must consider only what is presented to us.

In making "gross carelessness" one of the grounds for revocation of a license it is clear that the statute did not go beyond the constitutional powers of the Legislature. The phrase is synonymous with "gross negligence," and the latter phrase has a well-understood meaning built up in innumerable cases arising in all branches of the law, as well as in many cases involving the relations of physicians and their patients.

" 'Gross negligence' is that entire want of care which would raise a presumption of conscious indifference to consequences; an entire want of care, or such a slight degree of care as to raise the presumption of entire disregard for, and indifference to, the safety and welfare of others; the want of even slight care or diligence. Foster v. State [102 Tex. Cr. R. 602] 279 S. W. 270; L. & N. Ry. Co. v. Smith [135 Ky. 462] 122 S. W. 806; Strong v. Western Union Telegraph Co. [18 Idaho, 389] 109 P. 910 [30 L. R. A. (N. S.) 409, Ann. Cas. 1912A, 55]; Words and Phrases, Third Series, 'Gross Negligence.' "

"In the absence of any statute the common law holds every physician and surgeon answerable for an injury to his patient resulting from want of the requisite knowledge and skill, or the omission to use reasonable care and diligence, or the failure to exercise his best judgment." 21 R. C. L. 26, p. 379.

In view of the established meaning of the term under the common law, as interpreted in a long line of cases, it cannot be successfully maintained that "gross carelessness" is too vague an expression, or that the charge filed against the defendant-appellant did not give him notice of the nature of the allegation which he was called upon to defend.

The term "gross carelessness" has an ascertainable meaning to the medical profession as well as to laymen. In the instant case the "gross carelessness" and "manifest incapacity" were alleged to have been shown in treating a patient "for suspected threatened abortion."

The phrase "manifest incapacity," however, stands in a different light from that just treated. The phrase is not defined by the common law; we have been unable to find a judicial interpretation of the phrase as an entity either in cases in general or in those dealing with physicians particularly; there is nothing in the instant statute that attempts to define the term. The phrase must, then, be interpreted.

In Re Hermance v. Supervisors of Ulster County, 71 N. Y. 481, it was said: Something manifest is "something which is apparent by an examination * * * needing no evidence to make it more clear. That which is open, palpable, and, I might add, incontrovertible." In Travelers' Insurance Co. v. Richmond (Tex. Com. App.) 291 S. W. 1085, 1087, it was said that "incapacity" used

without qualifying words means "inefficiency," "incompetency," and "lack of adequate power." Manifest incapacity, then, in the sense of the statute means a lack of power to comprehend or to act, such lack being so obvious that no proof is necessary to establish it, other than proof of the act itself.

The board of health of Hawaii has seven members, of whom two are physicians. Their decision as to any particular case would be opinion, but opinion in the sense that a jury's verdict is opinion. One can never escape the fact that the judgment of administrative boards must, in the last analysis, be opinion, but in the case of a board in which there are professional men, an opinion fortified with judgment and experience.

In this connection, we may state in passing that section 15 of the Revised Laws of Hawaii 1925 provides: "Each of the terms 'or' and 'and' has the meaning of the other or of both, where the subject matter, sense and connection require such construction."

Accordingly, it might be argued that proof of acts of *either* "gross carelessness" *or* "manifest incapacity" might be sufficient to support a revocation of a physician's license. We are not basing our decision, however, upon this ground.

Nor are we relying upon the form of license set forth in section 1027, which provides: "This license is granted and accepted on the express condition that it may be revoked at any time for professional misconduct, gross carelessness or manifest incapacity; such misconduct, carelessness or incapacity, having been proven to the satisfaction of the board of health, and by that body reported to the treasurer."

We desire to point out, however, that this provision in the license was impliedly agreed to by the appellant when he accepted the license. It will also be noticed that the conjunction used in the license is "or" and not "and," as in section 1029.

The criterion to be applied to statutes of the nature of the one in question is thus stated in 5 A. L. R. page 94: "The rule obtaining in the majority of the jurisdictions which have passed on the question is that a statute providing that the license of a physician, surgeon, or dentist may be revoked by the officers or board by which such licenses are granted, is not rendered uncertain or otherwise invalid because the grounds for revocation are therein stated in general terms."

In Ruling Case Law, vol. 21, pp. 365–367, we find the following language: "The universal custom among the states requiring a license of physicians and surgeons is to vest in a medical board the power of examining applicants and determining their fitness to practice. There has been a good deal of litigation involving the validity of such delegation but almost always with the result that the delegation was held to be valid. True, such boards are ministerial in their nature, but a full discharge of their duties often necessitates the consideration and determination of questions legal in their nature. However, due process is not necessarily judicial process, and such delegation violates no province of the federal constitution, or of the general law. As there is no real distinction between refusing and revoking a license, the same body which may be vested with power to grant, or refuse to grant, a license may also be vested with the power to revoke it. To particularize, a state may delegate not only the power of determining an applicant's intellectual fitness and educational qualifications, but also his moral fitness; or the power may be broad enough to cover the general fitness of the applicant. * * * In case of an applicant's grievance because of some act of such a board or because of its failure to act, the remedy is not against the delegation of power but against its proper exercise, and is available by means of a proper proceeding against the board. Should the board act arbitrarily a court may intervene in order to protect private rights. However, these boards have broad discretionary powers and the exercise thereof, if not unreasonable and if free from fraud, corruption or oppression, will not be disturbed; the findings of fact made by such boards will be conclusive on the courts to which actions may be brought for review. * * * The board is not bound by the ordinary rules of procedure or evidence that apply in a court of law or equity. Even though there is given no right of appeal from the decision of the administrative board, the federal constitution is not violated, for the right of appeal is not essential to due process of law."

While the foregoing statements are persuasive, we do not need to rely upon them. The Supreme Court of the United States has spoken—recently and unequivocally.

In Bradley v. Richmond, 227 U. S. 477, 482, 33 S. Ct. 318, 319, 57 L. Ed. 603, the court said:

"Neither do we see any reason under the 14th Amendment why the state may not delegate to either the council of the city or to a board appointed for that purpose the power

to divide such occupations or privileges into classes or subclasses, and prescribe the tax to be paid by the members of each such class. Gundling v. Chicago, 177 U. S. 183, 20 S. Ct. 633, 44 L. Ed. 725; Fischer v. St. Louis, 194 U. S. 361, 372, 24 S. Ct. 673, 48 L. Ed. 1018, 1024; Lieberman v. Van De Carr, 199 U. S. 552, 560, 26 S. Ct. 144, 50 L. Ed. 305, 310. In the case last cited, this court said:

"'That this court will not interfere because the states have seen fit to give administrative discretion to local boards to grant or withhold licenses or permits to carry on trades or occupations, or perform acts which are properly the subject of regulation in the exercise of the reserved power of the states to protect the health and safety of its people, there can be no doubt.'"

Again, in the case of Douglas v. Noble, 261 U. S. 165, 169, 170, 43 S. Ct. 303, 305, 67 L. Ed. 590, we find the following language, used by Mr. Justice Brandeis: "The Legislature itself may make this finding of the facts of general application, and by embodying it in the statute make it law. When it does so, the function of the examining board is limited to determining whether the applicant complies with the requirements so declared. But the Legislature need not make this general finding. To determine the subjects of which one must have knowledge in order to be fit to practice dentistry, the extent of knowledge in each subject, the degree of skill requisite, and the procedure to be followed in conducting the examination—these are matters appropriately committed to an administrative board. Mutual Film Corporation v. Ohio Industrial Commission, 236 U. S. 230, 245, 246, 35 S. Ct. 387, 59 L. Ed. 552, Ann. Cas. 1916C, 296. And a Legislature may, consistently with the federal Constitution, delegate to such board the function of determining these things, as well as the functions of determining whether the applicant complies with the detailed standard of fitness. Reetz v. Michigan, 188 U. S. 505 23 S. Ct. 390, 47 L. Ed. 563."

Finally, in Lehman v. State Board of Accountancy, 263 U. S. 394, 395, 398, 44 S. Ct. 128, 68 L. Ed. 354, we find a case presenting facts in many respects analogous to those at bar. In that opinion, delivered by Mr. Justice McKenna, the court said:

"By a statute of the state of Alabama, a board denominated the 'Board of Public Accountancy' was created. The board has authority to examine applicants for certificates or licenses to practice the business or calling of public accountant and to issue certificates to those whom the board deems qualified.

"The board is given power to cancel the certificate granted 'for any unprofessional conduct of the holder of such certificate, or for other sufficient cause.' * * *

"Plaintiff in error puts some stress upon the absence of rules by the board, urging that the statute is in conflict with the Constitution of the United States, because it purports to authorize the revocation of a certificate 'without defining or determining in advance what grounds or facts or acts shall be sufficient cause for such revocation.' * * * We cannot yield to that assertion or assume that the board will be impelled to action by other than a sense of duty or render judgment, except upon convincing evidence introduced in a regular way with opportunity of rebuttal. We certainly cannot restrain the board upon the possibility of contrary action. Official bodies would be of no use as instruments of government, if they could be prevented from action by the supposition of wrongful action."

Furthermore, it may be pointed out that there is vast difference between "unprofessional and dishonorable conduct," a phrase sometimes found in the statutes of this nature, and the term "gross carelessness and manifest incapacity." The former relates to the professional ethics and the personal conduct of the physician, while the latter relates to the physician's method of treatment and the degree of care exercised in the treatment of the patient, and to the physician's skill or capacity properly to diagnose and treat such patient—terms that seem to have a well-defined meaning both in the law and in the medical profession.

Judgment affirmed.