297 So.2d 663 (1974)
In re GULF OXYGEN WELDER'S SUPPLY PROFIT SHARING PLAN AND TRUST AGREEMENT, Petitioner-Appellant.
No. 54622.
Supreme Court of Louisiana.
July 1, 1974.
*664 Edwin K. Hunter, M. Dennis Daugherty, Camp, Carmouche, Palmer, Carwile & Barsh, Lake Charles, for appellant.
TATE, Justice.
The trustee of a trust applied to the district court of proper venue for instructions construing the trust instrument. The application was made in ex parte proceedings, as authorized by La.R.S. 9:2233 (1964).
The district court held this statute unconstitutional, as requiring it to render advisory opinions. The appeal to the court of appeal was transferred to this court, 291 So.2d 887 (La.App.3d Cir.1974), since this court has appellate jurisdiction where a statute is declared unconstitutional. La. Const. Art. VII, Section 10(2) (1921, as amended).

Facts
In 1966, ten corporations established the present profit-sharing plan and trust for the benefit of their employees. In 1972, the participant companies agreed to its termination. The trustee applied to the federal Internal Revenue Service for a determination as to the effect of each company's termination in the plan. The federal agency held that, as to one of the companies ("Baton Rouge"), the plan had terminated in 1970, and that certain funds allocated to Baton Rouge's former employees should have been held vested and distributed at that time.
The trustee set forth these facts in full and applied to the district court for certain *665 instructions, such as (see Footnote 7 below) whether Baton Rouge's participation in the trust had terminated in 1970 because of its failure to make contributions.
The application was made pursuant to a provision of the Louisiana Trust Code of 1964, La.R.S. 9:1721-9:2252. The provision authorizes a trustee to apply to the court "for instructions concerning the trust instrument, the interpretation of the instrument, or the administration of the trust." La.R.S. 9:2233 (quoted in full in Footnote 3 below). Subsection A of the provision authorizes adversary proceedings, by which a trustee is fully protected from subsequent claims; subsection B (that presently utilized) authorizes ex parte proceedings, which will protect a third party relying on the order, but which does not exonerate the trustee from liability to a settlor or beneficiary.

Unconstitutionality or not of 2233 B
On its own motion, the conscientious district court held Section 2233, subd. B, unconstitutional as requiring it to render ex parte advisory opinions in violations of Articles II and VII of the Louisiana Constitution of 1921. In so doing, our learned trial brother relied upon Abbott v. Parker, 259 La. 279, 249 So.2d 908 (1971), Petition of Sewerage & Water Board of New Orleans, 248 La. 169, 177 So.2d 276 (1965), and State v. Board of Supervisors, 228 La. 951, 84 So.2d 597 (1955).
These decisions concern whether a "justiciable controversy" existed for purposes of permitting relief under the declaratory judgments procedure, La.C.Civ.P. arts. 1871-1883. For purposes of that act, a justiciable controversy requires a true interest of the plaintiff (i. e., "standing") and the defendant in having the issue resolved, as well as an adversity of interest between them. Louisiana Independent Auto Dealers Assn. v. State, 295 So.2d 796 (La.1974) (rendered April 29, 1974). The holding of these decisions is only that, in the absence of these requirements, the relief authorized by the declaratory judgments statute is not available to an applicant. The decisions are thus not authority for holding the present statute, La.R.S. 9:2233, unconstitutional.[1]
A general principle of judicial interpretation of a state constitution is that, unlike the federal constitution, a state charter's provisions are not grants of power, they are rather limitations on the power of the people exercised through the state legislature. In its exercise of the entire legislative power of the state, the legislature may enact any legislation that the state constitution does not prohibit. Thus, to hold legislation invalid under the state constitution, it is necessary to rely upon some particular constitutional provision that limits the power of the legislature to enact the statute assailed.
See, e. g.: Kane v. Louisiana Commission on Governmental Ethics, 250 La. 855, 199 So.2d 900 (1967); State v. Guidry, 247 La. 631, 173 So.2d 192 (1965); State v. Macaluso, 235 La. 1019, 106' So.2d 455 (1958); State ex rel. Labauve v. Michel, 121 La. 374, 46 So. 430 (1908); and the many other decisions cited in these opinions.
The present statute authorizes the trustee to apply to a district court of appropriate venue for instructions as to doubtful legal questions arising in connection with the trust instrument and its interpretation and administration. We find no authority *666 that such is not a judicial function, whatever discretion (see below) the court may have in its exercise or whether to exercise it. Nor can we find authority holding that performance of the judicial function necessarily requires an adversary proceeding.[2]
We find nothing in the constitutional articles cited that restrict the power of the legislature to enact the statute now attacked. Article II provides for the distribution of governmental powers into the legislative, executive, and judicial branches. Article VII provides for the exercise of the judicial power by the judicial branch. Section 35 thereof provides that district courts "shall have original jurisdiction in all civil matters regardless of the amount in dispute... and in all cases where no specific amount is in contest, except as may be otherwise provided in this Constitution." See Section 81 for similar provision with regard to the civil district court in Orleans Parish. Section 3 thereof provides that "No function shall ever be attached to any court of record, or to the judges thereof, except such as are judicial * * *."
None of these provisions, nor any other we can find in our state constitution, prohibit the legislature from vesting jurisdiction in the district courts to make judicial interpretations on the application of trustees, concerning the legal interpretation or application of the trust instruments under which they operate, or that requires such trustee-instruction proceedings to be adversary in character. Under the principles of constitutional interpretation earlier set forth, we are therefore unable to find unconstitutional the present statute.
Trustee-Instruction Proceedings
Nevertheless, we do not feel to be unwarranted the concern of the trial court in being asked, on ex parte application, to issue instructions relating to the interpretation or application of trust provisions. Since the present is a case of first appellate impression on the issue in this state, we deem it appropriate to set forth by way of background some of the purposes for, and limitations upon, the utilization of the trustee-instruction proceedings authorized by the statute at issue.
As earlier noted, Section 2233 of the Louisiana Trust Code of 1964 (La.R.S. 9:2233) authorizes a trustee to apply to a district court of appropriate venue for instructions "concerning the trust instrument, the interpretation of the instrument, or the administration of the trust."[3] Subsection A was intended to provide for adversary proceedings which fully protect the trustee from subsequent claims against him based upon the action, as provided by our previous trust statutes.[4]
Subsection B, a new statutory provision, provides for the trustee's ex parte application for and obtaining of instructions, with the provision that such an instruction thus obtained ex parte could not *667 exonerate a trustee from liability to a settlor or beneficiary, although it would protect a third party relying on the order.[5] The apparent intent of Subsection B is to enable the trustee to deal efficiently with third persons pursuant to instructions so obtained ex parte, but without prejudice to the rights of the settlor or beneficiary to hold the trustee liable for breach of his trust in such regard.
A traditional feature of trust administration has been to permit the trustee, within limitations to be set forth, to apply for instructions from the court. 3 Scott on Trusts, Section 259 (3d ed. 1967); Bogert, Trusts and Trustees, Section 559 (2d ed. 1960); Restatement of Trusts 2d, Section 259 (1959); Comment, 44 Yale L.J. 1433 (1935). The purpose of this authorization, as stated by Scott, cited above at p. 2214, is: "A trustee is not compelled to act at his peril in the administration of the trust. He need not act first and discover later whether his act was in breach of trust. He is entitled to the instructions of the court as a protection."
As these cited authorities note, however, the trustee may so apply only if there is reasonable doubt as to his duties or powers as trustee.[6] Further, he is not entitled to instructions as to questions which may never arise or which may arise in the future but which have not yet arisen, or as to matters resting within his discretion.
The costs incurred through the application for instructions are ordinarily payable out of the trust estate rather than taxed against the trustee personally. Nevertheless, this is not the case where the application for instructions is plainly unwarranted, so that it was improper for the trustee to incur such expense. Restatement, Section 259, Comment a, Section 245.
The usual rule is that beneficiaries adversely affected should be made party to the trustee-instruction proceedings. Bogert, cited above, at p. 89; Annotation, Trust Beneficiaries as Parties, 9 A. L.R.2d 44, Section 18 (1950); 90 C.J.S. Trusts § 261d(3). Nevertheless, we could find no authority which invalidates a proceeding expressly authorized by a statute enabling a court to issue instruction without joining the beneficiaries as parties; although of course such instructions cannot be binding on the beneficiaries as against the trustee, where they have had no notice or opportunity to be heard. Kealoha v. Castle, 210 U.S. 149, 28 S.Ct. 684, 52 L.Ed. 998 (1908).
The present cause of the trial court's concern in being asked, upon ex parte application and brief, to interpret the instant trust instrument is readily understandable.
The federal internal revenue service had questioned the existence of Baton Rouge's participation in the trust beyond 1970, as well as the forfeiture of the $6,280.84 interest of three employees who resigned that year and the reallocation of most of that amount to the interest of three new employees. While the instructions asked[7] *668 appear to relate to interpretation of the trust instrument, nevertheless, the trial court was asked to determine, without notice to them, whether a substantial forfeited interest of the three resigned employees in the trust had been properly allocated to three new employees who replaced them.[8] Furthermore, the trial court was asked to construe a seemingly complex trust instrument on briefing by one party alone.
We think, however, that the discretion of the trial court in administering a trustee-instruction proceeding includes powers which enable it to secure impartial expert technical help,[9] if needed, and which enable it to condition any relief it affords upon notice and an opportunity to be heard to parties who may be genuinely prejudiced as a result of the ex parte instructions. (However, since the object of 2233, subd. B is to facilitate a trustee's obtaining instructions expeditiously and without joinder of the beneficiaries as indispensable parties, the court's conditioning its instructions upon joinder should apply only where genuine prejudice may result to those beneficiaries not receiving notice of the application for instructions.)[10]

Decree
For the foregoing reasons, we reverse the judgment of the district court holding La.R.S. 9:2233, subd. B unconstitutional and dismissing the present petition for lack of jurisdiction. The case is remanded for further proceedings consistent with the views here expressed.
Reversed and remanded.
SUMMERS, J., dissents and assigns reasons.
SUMMERS, Justice (dissenting).
The Constitution of Louisiana announces that district courts, except in the parish of Orleans, "shall have original jurisdiction in all civil matters regardless of the amount in dispute, or the fund to be distributed." (emphasis added). La.Const. art. VII, ¶135. And the Courts of Appeal likewise only have appellate jurisdiction of "all civil and probate matters of which the district courts throughout the state have exclusive original jurisdiction." La.Const. art. VII, ¶ 29. Aside from its supervisory jurisdiction, the Supreme Court, in the context of the matter before us, has appellate jurisdiction of "Cases in which ... a law of this state has been declared unconstitutional...." (emphasis added). La. Const. art. VII, ¶ 10.
Thus the constitution confers jurisdiction on district courts to decide "disputes"; and the jurisdiction of courts of appeal involves those disputes, while the Supreme *669 Court's supervisory and appellate jurisdiction extends only to "cases". The meaning of these constitutional limitations on the authority of the judiciary has been made clear by decisions of this Court and the enactments of our legislature. These pronouncements adhere to the fundamental and elementary principles underlying the judicial function implicit in the doctrine of separation of powers. La.Const. art. II. Cooley explains the rationale of these principles in light of the history of constitutions when Louisiana's charter was enacted.
"The courts have no authority to pass upon abstract questions, or questions not presented by actual litigation, and have therefore nothing to do with questions which relate exclusively to executive or legislative authority; nor is there any method in which their opinions can be constitutionally expressed, so as to have binding force upon either the executive or the legislature, when the question presents itself, not as one of existing law, but as one of what it is proper or politic or competent to make law for the future. The judiciary, though the final judge of what the law is, is not the judge of what the law should be.
"In construing the clause of the Constitution which provides that: `The judicial power shall extend to all cases, in law and equity, arising under this Constitution,' etc. the Supreme Court has steadily denied to the Federal Courts the power themselves voluntarily to render, and the right of Congress to compel them to render, moot, advisory or declaratory judgments. If the controversy is already disposed of and a judgment, if rendered would not affect the property or personal rights of the litigants, there would be lacking the real elements of a judicial controversy; and the same thing would be true of a declaratory judgment the object of which is not to give redress for injuries which have actually been sustained or, as in the case of an injunction, to prevent the commission of an injury which is actually threatened and imminent, but to establish and declare existing rights in advance of any actual or threatened denial of them or injury to them. Much less will the Federal Courts assume the power, or allow the power to be thrust upon them by Congress, to act as advisors to that body, to the President of the United States, or to any other executive or administrative officer or body, and to express an opinion as to the validity or wisdom of any proposed legislation or of any proposed executive or administrative action. On this last question there appears to be a unanimity of opinion and decision both in the State and Federal Courts, and though the Constitutions of some of the States authorize the giving of such opinions, with the solitary exception of the Supreme Court of the State of Colorado, all of the State courts hold that the constitutional provisions call for an expression of opinion merely, and that that opinion `cannot be considered in any sense as binding or conclusive.'" Cooley, Constitutional Law, The Judicial Department, p. 182 (1931).
A district court, therefore, can only adjudicate "disputes". These, of course, require contending parties before the court. Suits in courts of law have always contemplated partiesa person suing and a person sued, a plaintiff and a defendant. La. Code Civ.P. arts. 681-742. The proceeding must be adversary.
Since 1810 we have held that "Courts of justice are to decide on real contests...." Livingston v. D'Orgenoy, 1 Mart. (O.S.) 87 (La.1810). See also State ex rel. Howard v. Burbank, 22 La.Ann. 298 (1870); Duffy v. City of New Orleans, 49 La.Ann. 114, 21 So. 179 (1896). In keeping with this principle, courts will not anticipate issues. It is the function of courts to deal with actual issues. "Courts do not sit to decide abstract questions or render *670 judgments which cannot be executed." Succession of Carbajal, 154 La. 1060, 98 So. 666 (1924). And the constitution does not vest the Supreme Court with jurisdiction to render advisory opinions. La. Const. art. VII, ¶ 11. Belsome v. Southern Stevedoring, Inc., 239 La. 413, 118 So. 2d 458 (1960); Orleans Parish School Board v. City of New Orleans, 238 La. 748, 116 So.2d 509 (1959). To the same general effect, see Jung v. Gwin, 174 La. Ill, 139 So. 774, cert. denied, 286 U.S. 561, 52 S.Ct. 644, 76 L.Ed. 1294 (1932); Straub v. Healy, 164 La. 733, 114 So. 634 (1927).
A case in controversy, a dispute or justiciable controversy, then, is a matter of jurisdiction without which the judiciary cannot act. Jurisdiction is the legal power and authority of a court to hear and determine an action or proceeding involving the legal relations of the parties, and to grant the relief to which they are entitled. La. Code Civ.P. art. 1.
As we said in State v. Board of Supervisors, Louisiana State University & Agricultural & Mechanical College, 228 La. 951, 84 So.2d 597 (1955):
"Thus, in order for the court to become seized of jurisdiction in the first instance, there must be a dispute or controversy over some matter or right in which the opposing parties have an interest. For one to sue, his interest must be real and actual, Article 15, Code of Practice, and a controversy between the suitor and the defendant must exist."
The principle thus firmly embodied in our constitution is again restated in Petition of Sewerage and Water Board of New Orleans, 248 La. 169, 177 So.2d 276 (1965):
"At the outset, we feel obliged to take cognizance, ex proprio motu, that this is not an adversary proceeding and that it does not present a justiciable controversy which is essential in order for the court to give declaratory relief. According to the frank statement of petitioner's counsel, this is at most a request for an advisory opinion in order to satisfy the demands of the Board's bond attorneys, who have conditioned their approval of any revenue bonds which the Board might decide to issue in the future on a favorable ruling of this Court as to the validity of the amendment to Section 23.3 of Article XIV of the Constitution. But neither this Court nor any of the other tribunals in Louisiana are authorized to deliver advisory opinions. It is well settled in our law that courts sit to administer justice in actual cases and that they do not and will not act on feigned ones, even with the consent of the parties." (emphasis added). See also Nicholson v. Thompson, 5 Rob. 367 (La.1843).
Pertinent to this opinion is the observation that in each instance in the two proceeding cases this Court noted the lack of jurisdiction sua sponte. Relying upon these holdings the trial judge in the case at bar properly noted the unconstitutionality sua sponte of Section 2233, subd. B of Title 9, for it sought to confer jurisdiction on the court contrary to the constitutional limitation.
More recently the rule has been recognized with emphasis by a unanimous court in Abbott v. Parker, 259 La. 279, 308, 249 So.2d 908, 918 (1971), in these terms:
"A `justiciable controversy' connotes, in the present sense, an existing actual and substantial dispute, as distinguished from one that is merely hypothetical or abstract, and a dispute which involves the legal relations of the parties who have real adverse interests, and upon which the judgment of the court may effectively operate through a decree of conclusive character. Further the plaintiff should have a legally protectable and tangible interest at stake, and the dispute presented should be of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."
I take it to be settled from the foregoing authorities that the constitution does not *671 authorize or confer upon the courts of this State the authority, power or jurisdiction to decide any but actual cases or controversies. The legislature may not, therefore, expand this limitation by its enactment of Section 2233, subd. B of Title 9 of the Revised Statutes and confer upon a trustee the right to "apply for instructions in ex parte proceedings." Such an attempted delegation of authority is nothing more than a device to enable a trustee to obtain from the courts an advisory opinion. In its effort to accomplish this result the legislature has attempted to override the constitution. This it may not do.
In may view the majority has misapplied the principle of judicial interpretation applicable to our state constitution. It is well recognized, as the majority observes, that only the state's constitution embodies limitations which the people have imposed on the otherwise unlimited power of the state's legislature to enact laws. Groves v. Slaughter, 15 Pet. 449, 40 U.S. 449, 10 L. Ed. 800 (1841); Joint Legislative Committee of Legislature v. Strain, 263 La. 488, 268 So.2d 629 (1972). But the majority errs when it finds that our constitution does not limit the power of the judiciary to the decision of "disputes" or "cases", or, in other words, justiciable controversies.
A fundamental rule of statutory construction for constitutional and legislative enactments alike is often expressed by the Latin maxim "Inclusio unius est exclusio alterius", meaning that the inclusion of one is the exclusion of another. Black's Law Dictionary (4th ed. 1957). Applied to this case, the rule requires that when the constitution delegates to the judiciary the authority to decide "disputes" and "cases" it necessarily and logically denies the right to render advisory opinions on moot, anticipated, or abstract propositions, the latter being entirely unrelated to the former. One is a real case on which an enforceable judgment can be rendered, while the other is an academic exercise.
Aside from the obvious interpretation the language of the constitution requires, and the repeated recognition and enforcement of that interpretation by this Court, there is nothing to indicate that the people in adopting the constitution ever intended that courts of law in this State should render advisory opinions on imagined, anticipated or moot problems. The very essence of the judicial function mandates that they not do so. For instance, in this case the proposition presented for "instructions" is a complex, specialized problem which the Court suggests the trial judge resolve with the help of an expert in the field. Consequently, without the benefit of an adversary, only the view of an expert stands behind the judgment. Restatement of Trusts 2d, ¶ 259 (1959).
"The Anglo-Saxon legal system contemplates advocates on each side of the case who seek to advance the best interest of their clients. Thus courts can have some confidence that they have explored the applicable jurisprudence and theories on each side." (Dixon, Justice, dissenting, Bertrand v. Sandoz, 260 La. 239, 268, 255 So.2d 754, 764 [1971]).
Courts are not to be made the advisors to trustees, or others, who anticipate problems that will arise in the administration of trusts, or other areas where legal problems arise. This is not a judicial function. Advisory opinions, rendered on the ex parte petition of one party, as here, cannot result in an enforceable judgment.
Nor can I agree with the majority that the cited decisions relate only to cases involving the declaratory judgments act. La.Code Civ.P. arts. 1871-1883. To the contrary, the issue in declaratory judgments act cases has been whether the elementary and fundamental jurisdictional requirement of a justiciable controversy in all cases is dispensed with by that act. Our courts have held that all litigation requires a justiciable controversy and that a justiciable controversy is essential to a declaratory judgment also. The overwhelming majority of other jurisdictions adopt this same view. 22 Am.Jur.2d, Declaratory Judgments ¶¶ 11, 12.
*672 The requirements for a justiciable controversy are no less exacting in a case brought under the declaratory judgment statute than in any other type of suit. Alabama State Federation of Labor v. McAdory, 325 U.S. 450, 65 S.Ct. 1384, 89 L. Ed. 1725 (1945). Only such questions may be settled under declaratory judgments acts as could be settled in some appropriate action in law if the remedy of declaratory judgment did not exist. Crank v. McLaughlin, 125 W.Va. 126, 23 S.E.2d 56 (1942); 26 C.J.S. Declaratory Judgments, § 27.
In an effort to support its decision, it is inappropriate for the Court to rely upon the articles of the Code of Civil Procedure concerning probate of testaments and sending heirs into possession (La.Code Civ.P. arts. 2881, 3001 and 3031) as a long-accepted practice of ex parte judicial functions. Section 29 of Article VII of the Constitution specifically invests in Courts of Appeal jurisdiction on appeal in "all civil and probate matters of which the district courts throughout the state have exclusive jurisdiction". (emphasis added). And Section 35 of Article VII invests in district courts jurisdiction "in all probate and succession matters".
Only brief reflection is needed to observe that the judicial function in probate and succession matters is conferred by the constitution. This is entirely different from the legislative attempt to authorize courts to decide moot, anticipated or abstract questions in other fields.
Most importantly, this decision sorely taxes the machinery for the administration of justice. Recently, in order to keep abreast of the case load, this Court has found it necessary to substitute brief per curiam decisions where formal opinions had been the rule, an unsatisfactory expedient at best. To permit the legislature to impose upon courts the responsibility of deciding abstract, moot or anticipated propositions will add to the already heavy burdens courts strive to discharge. Moreover, the fact of the matter is that deciding disputes in advance is, in effect, declaring what the law will be in a future controversy, a legislative function which courts may not usurpa function, too, which courts are ill-equipped to perform. By approving Section 2233 subd. B the Court improperly extends its authority and broadens its already impressive power.
Another disquieting effect of this decision is that it overrules all of the cases I have cited herea long line extending back to 1810. Indeed, the proposition is so fundamental and elementary that, considering this Court's long history, litigation on the subject has been infrequent.
Interpretation of a constitution must be uniform. A constitution does not mean one thing at one time and another at some other time.
I respectfully dissent.
NOTES
[1] In fairness to the trial judge, however, we should note that passing dicta in the Board of Supervisors case indicates that the judicial power is restricted to "real controversies" and cannot constitutionally be enlarged "to validate legislative action, or otherwise render advisory opinions." 84 So.2d 599. Without approving (or disapproving) such statement, it is sufficient to note that the present concerns a disputed issue in controversy. Furthermore, as will be noted later in this opinion, the usual judicial interpretation does not require a court to issue a trustee-instruction unless there is a reasonable doubt as to the issue involved.
[2] Cf., ex parte proceedings long accepted as appropriate for the exercise of the judicial function, such as La.C.Civ.P. arts. 2881 (probate of testaments), 3001 and 3031 (sending heirs into possession).
[3] La.R.S. 9:2233 in full provides:

"A. A trustee, a beneficiary, or a settlor in an ordinary or a summary proceeding may apply to the proper court for instructions concerning the trust instrument, the interpretation of the instrument, or the administration of the trust. An order of a proper court issued pursuant to such an application shall be full authority to act in accordance thereunder, and a trustee shall be fully protected from all claims of any person who has or who may subsequently acquire an interest in the trust property.
"B. A trustee may apply for instructions in ex parte proceedings. The order issued therein will protect a third party relying on the order, but will not exonerate a trustee from liability to a settlor or a beneficiary."
[4] Subsection A also permits a beneficiary or a settlor to apply for instructions. The provision was utilized in St. Charles Land Trust v. St. Amant, 253 La. 243, 217 So.2d 385 (1968). It substantially incorporates the provisions of former trust law found in Act 81 of 1938 (Section 94), incorporated in the revised statutes as La.R.S. 9:2192 (1950), as amended by Act 199 of 1950.
[5] This is in accord with the principle that an instruction secured by the trustee without reasonable notice to a beneficiary and opportunity by him to be heard is not res judicata insofar as the beneficiary is concerned. Kealoha v. Castle, 210 U.S. 149, 28 S.Ct. 684, 52 L.Ed. 998 (1908). See also Restatement of Trusts 2d, Section 259, Comment e, and Section 220 (1959).
[6] Bogert, cited above at p. 96 states: "The court will not advise the trustee as to his powers where they are clearly fixed by the trust instrument or by common or statute law, but only in cases of real difficulty where there is an honest doubt after a careful reading of the instrument and the procurement of legal advice from counsel. The courts do not hold themselves out to act as lawyers for timid trustees who seek court protection in every move they make or who desire to save the trust the expense of procuring the assistance of a lawyer."
[7] "Petitioner, therefore, desires this Honorable Court to interpret said Trust and instruct Petitioner as to the following:

"(A) Was Baton Rouge's participation in the Trust terminated in 1970 by failure of the company to make contributions?
"(B) Were Roil Ogeron. Earl nines. Sr. and John D. Hines [the new employees] participants in the Trust as it applied to Baton Rouge?
"(C) Were the forfeitures of 1970 properly allocated in accordance with the provisions of the Trust?
"(D) If the answer to (C) is no. how should the 1970 forfeitures be allocated?"
[8] Since, an action by a beneficiary against his trustee is prescribed by one year following the rendition of the trustee's final account to the beneficiary. La.R.S. 9:2234 (1964), the court may have been concerned that an ex parte instruction to the trustee which accepted the interest of these resigned employees as forfeited and reallocated, might substantially have deprived them of a real opportunity to contest such a holding, in the absence of any showing that in fact an earlier final accounting had caused any claim of theirs to prescribe.
[9] La.C.Civ.P. art. 192 provides: "A trial court, on its own motion or on motion of a party, may appoint persons learned or skilled in a science, art, profession, or calling as experts to assist it in the adjudication of any case in which their special knowledge or skill may aid the court. * * *" See also La.C.Civ.P'. art. 373.
[10] For instance, the three resigned employees should not be ordered joined if the forfeiture of their interest in the trust has prescribed or is not at issue, or if they have knowingly acquiesced in such forfeiture, or if for any other cause or by reason of any other condition attached by the trial court, its ex parte instructions do not result in a real possibility of prejudice to them.